**CASE NO. 23-11038**

# IN THE
# United States Court of Appeals
## FOR THE FIFTH CIRCUIT

Eric Jackson; Alaric Stone; Michael Marcenelle,

*Plaintiffs- Appellants,*

v.

Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security;
Lloyd J. Austin, III, Secretary, U.S. Department of Defense;
Linda Fagan, Commandant of the Coast Guard; Brian Penoyer,
Assistant Commandant for Human Resources of the Coast Guard,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, FT. WORTH

**APPELLANTS' OPENING BRIEF**

Michael G. McHale
THOMAS MORE SOCIETY
10506 Burt Circle, Suite 110
Omaha, NE 68114
402-501-8586
mmchale@thomasmoresociety.org

Stephen M. Crampton
THOMAS MORE SOCIETY
P.O. Box 4506
Tupelo, MS 38803
662-255-9439
scrampton@thomasmoresociety.org

Adam Hochschild
HOCHSCHILD LAW FIRM, L.L.C.
P.O. Box 401
Plainfield, VT 05667
314-503-0326
adam@hochschildlaw.com

Nathan Loyd
THOMAS MORE SOCIETY
309 W. Washington Street, Suite 1250
Chicago, IL 60606
312-896-0151
nloyd@thomasmoresociety.org

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

Eric Jackson; Alaric Stone; Michael Marcenelle,

Plaintiffs - Appellants

v.

Alejandro Mayorkas, Secretary, U.S. Department of Homeland
Security; Lloyd J. Austin, III, Secretary, U.S. Department of Defense;
Linda Fagan, Commandant of the Coast Guard; Brian Penoyer,
Assistant Commandant for Human Resources of the Coast Guard,

Defendants - Appellees

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

There are no corporations that are either parents of any of the Plaintiffs-Appellants or that own 10% or more stock in any of the Plaintiffs-Appellants.

## A. Plaintiffs-Appellants

Eric Jackson
Alaric Stone
Michael Marcenelle

## B. Current and Former Attorneys for Plaintiffs-Appellants

Current Attorneys

Stephen Crampton
THOMAS MORE SOCIETY
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael G. McHale
THOMAS MORE SOCIETY
10506 Burt Circle, Ste. 110
Omaha, NE 68114
(402)501-8586
mmchale@thomasmoresociety.org

Nathan Loyd
THOMAS MORE SOCIETY
5101 Old Highway 5, Box 442
Lebanon, GA 30146
(559)744-3664
nloyd@thomasmoresociety.org

Adam S. Hochschild
Hochschild Law Firm, LLC
THOMAS MORE SOCIETY
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Former Attorneys

> Mary Catherine Martin
> THOMAS MORE SOCIETY
> 112 S. Hanley Rd., Second Floor
> Clayton, MO 63105
> (314)825-5725
> mmartin@thomasmoresociety.org
>
> Charles W. Fillmore
> H. Dustin Fillmore III
> THE FILLMORE LAW FIRM, L.L.P.
> Fort Worth, TX 76102
> (817)332-2351
> chad@fillmorefirm.com
> dusty@fillmorefirm.com
>
> Paul M. Jonna
> LiMandri & Jonna LLP
> THOMAS MORE SOCIETY
> P.O. Box 9120
> Rancho Santa Fe, CA 92067
> (858)759-994
> pjonna@limandri.com

## C. Defendants-Appellees

> Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security
> Lloyd J. Austin, III, Secretary, U.S. Department of Defense
> Linda Fagan, Commandant of the Coast Guard
> Brian Penoyer, Assistant Commandant for Human Resources of the Coast Guard

## D. Current and Former Attorneys for Defendants-Appellees

<u>Current Attorneys</u>
    Cody Knapp
    Sarah Clark
    United States Department of Justice
    Civil Division
    Federal Programs Branch
    1100 L Street NW
    Washington, D.C. 20530
    (202)532-5663
    cody.t.knapp@usdoj.gov
    sarah.clark@usdoj.gov

<u>Former Attorney</u>
    Johnny Walker
    United States Department of Justice
    Civil Division
    Federal Programs Branch
    1100 L Street NW
    Washington, D.C. 20530
    (202)532-5663
    johnny.h.walker@usdoj.gov

## E. Other Interested Persons
None

Dated: December 18, 2023

                    /s/    *Michael McHale*
                    Michael G. McHale
                    THOMAS MORE SOCIETY
                    10506 Burt Cir. Ste. 110
                    Omaha, NE 68114
                    (402)501-8586
                    mmchale@thomasmoresociety.org
                    *Counsel for Plaintiffs-Appellants*

v

## STATEMENT REGARDING ORAL ARGUMENT

This appeal raises critical questions about government obligations to restore unvaccinated Coast Guard service members to equal footing with their vaccinated counterparts in accordance with the Religious Freedom Restoration Act (RFRA) and the First Amendment. Wrongly assuming that the Coast Guard has followed the same path as other branches, including the Navy (*see U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666 (5th Cir. 2023)), the District Court ignored key evidence that Plaintiffs have not been restored to equal footing and held that the Coast Guard has accomplished all it must do and that this case is moot.

Indeed, critical gaps remain between Plaintiffs and their vaccinated peers in the Coast Guard. The District Court failed to acknowledge the need for relief and to examine the ample evidence of litigation posturing presented by Plaintiffs.

 Oral argument would likely assist this Court in addressing the unique injuries Plaintiffs are incurring as religious service members in the Coast Guard, and thus why they remain in need of judicial relief from the Coast Guard's ongoing violation of their RFRA and First Amendment rights.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** ....................................... ii

STATEMENT REGARDING ORAL ARGUMENT...................................... vi

TABLE OF CONTENTS ...................................................................... vii

TABLE OF AUTHORITIES ................................................................. ix

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION ................................................3

STATEMENT OF THE ISSUES ....................................................4

STATEMENT OF THE CASE ........................................................4

   I.   The Coast Guard imposed its vaccine mandate and offered a sham religious accommodation process. ........................................................4

   II.   Plaintiffs promptly took action to protect their and fellow service members' religious-liberty rights. ........................................................10

   III.   The Coast Guard voluntarily rescinded its mandate but, uniquely among the service branches, failed to make unvaccinated Coast Guard service members whole. ........................................................11

   IV.   The District court dismissed the case and denied Plaintiffs' Rule 60(b), and Plaintiffs appealed. ........................................................19

SUMMARY OF THE ARGUMENT ................................................21

ARGUMENT ...............................................................................26

   I.   Standard of Review........................................................................26

   II.   The Coast Guard uniquely fails to show mootness. ........................26

     A.   Ongoing collateral consequences of the mandate prevent mootness. ........................................................27

     B.   At minimum, Plaintiffs' claims for declaratory relief are not moot........................................................39

     C.   Plaintiffs' claims are justiciable and not subject to *Mindes* exhaustion. ........................................................47

   III.   Mootness exceptions also apply. ........................................................50

     A.   Voluntary cessation...........................................................51

B.    Capable of repetition but evading review. .....................................62

IV.    The District Court wrongly denied Plaintiffs' Rule 60(b) motion 63

A.    The new and flagrantly discriminatory Coast Guard policy. ....64

B.    The District Court should have granted Plaintiffs' Rule 60(b) motion. ...............................................................................65

C.    This Court should reverse the District Court's barebones denial for abuse of discretion. ...............................................68

CONCLUSION ............................................................................69

CERTIFICATE OF SERVICE .......................................................71

CERTIFICATE OF COMPLIANCE ..............................................72

# TABLE OF AUTHORITIES

## Cases

*Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urb. Dev.*,
618 F. App'x 781 (5th Cir. 2015) ............................................................ 46

*Already, LLC v. Nike*,
568 U.S. 85 (2013) ................................................................................ 27

*Austin v. Navy SEALs 1-26*,
142 S. Ct. 1301 (2022) ...................................................................... 35, 48

*Bailey v. Ryan Stevedoring Co.*,
894 F.2d 157 (5th Cir. 1990) ................................................................ 67

*Blois v. Friday*,
612 F.2d 938 (5th Cir. 1980) ............................................................ 64, 69

*Boudreaux v. Louisiana State Bar Ass'n*,
86 F.4th 620 (5th Cir. 2023) ................................................................ 28

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
508 U.S. 83 (1993) ................................................................................ 26

*Cath. Leadership Coal of Texas v. Reisman*,
764 F.3d 409 (5th Cir. 2014) ................................................................ 62

*Chafin v. Chafin*,
568 U.S. 165 (2013) .............................................................................. 26

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982) .......................................................................... 51, 52

*Colonel Fin. Mgmt. Officer v. Austin*,
622 F. Supp. 3d 1187 (M.D. Fla. 2022) ................................................ 42

*Connell v. Shoemaker*,
555 F.2d 483 (5th Cir. 1977) ........................................................ *passim*

*Daily v. Vought Aircraft Co.*,
141 F.3d 224 (5th Cir. 1998) ............................................................... 27

*Danos v. Jones*,
652 F.3d 577 (5th Cir. 2011) ............................................................... 43

*Doster v. Kendall*,
2022 WL 2974733 (S.D. Ohio July 27, 2022), *aff'd*, 53 F.4th 398 (6th
Cir. 2022), *cert. granted, judgment vacated*, No. 23-154, 2023 WL
8531840 ........................................................................................ 42

*Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022), *cert. granted, judgment
vacated*, No. 23-154, 2023 WL 8531840 ................................................ 61

*Firefighters Loc. Union No. 1784 v. Stotts*,
467 U.S. 561 (1984) ................................................................... 34, 35

*F.C.C. v. Fox Television Stations Inc.*,
586 U.S. 239 (2012) ....................................................................... 46

*Foretich v. United States*,
351 F.3d 1198 (D.C. Cir. 2003) .......................................................... 43

*Franciscan All., Inc. v. Becerra*,
47 F.4th 368 (5th Cir. 2022) ............................................................. 52

*Freedom From Religion Found. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ............................................................. 28

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) ....................................................................... 58

*Good Luck Nursing Home, Inc. v. Harris*,
   636 F.2d 572 (D.C. Cir. 1980 ................................................................. 67

*Hewlett-Packard Co. v. Quanta Storage, Inc.*,
   961 F.3d 731 (5th Cir. 2020) ......................................................... 64, 68

*Hodges v. Callaway*,
   499 F.2d 417 (5th Cir. 1974) ................................................................. 50

*Holt v. Hobbs*,
   574 U.S. 352 (2015) .............................................................................. 34

*In re Cendant Corp. PRIDES Litig.*,
   234 F.3d 166 (3d Cir. 2000) ................................................................. 68

*Johnson v. City of Opelousas*,
   658 F.2d 1065 (5th Cir. 1981) .............................................................. 45

*Johnson Waste Materials v. Marshall*,
   611 F.2d 593 (5th Cir. 1980) ................................................................. 65

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
   341 U.S. 123 (1951) .............................................................................. 40

*Kendall v. Doster*,
   No. 23-154, 2023 WL 8531840 (U.S. Dec. 11, 2023).................... *passim*

*Kirksey v. City of Jackson*,
   714 F.2d 42 (5th Cir. 1983) ................................................................. 66

*Klapprott v. United States*,
   335 U.S. 60 (1949) .............................................................................. 67

*Log Cabin Republicans v. United States,*
  658 F.3d 1162 (9th Cir. 2011) .............................................................. 47

*Los Angeles Cnty. v. Davis,*
  440 U.S. 625 (1979) ............................................................................ 27

*McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of
  Jud. Conf. of U.S.,*
  264 F.3d 52 (D.C. Cir. 2001) ............................................................... 44

*Meese v. Keene,*
  481 U.S. 465 (1987) ...................................................................... 23, 40

*Mesquite v. Aladdin's Castle, Inc.,*
  455 U.S. 283 (1982) ............................................................................ 25

*Mindes v. Seaman,*
  453 F.2d 197 (5th Cir. 1971) ............................................................... 49

*Missouri v. Biden,*
  83 F.4th 350 (5th Cir. 2023) .................................................................. 9

*Mock v. Garland,*
  75 F.4th 563 (5th Cir. 2023) ................................................................ 69

*Murthy v. Missouri,*
  No. 23-411, 2023 WL 6935337 (U.S. Oct. 20, 2023) ........................... 10

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of
  Jacksonville, Fla.,*
  508 U.S. 656 (1993) ........................................................ 34, 36, 58, 62

*Orloff v. Willoughby,*
  345 U.S. 83 (1953) ........................................................................ 37, 47

*Parisi v. Davidson,*
  405 U.S. 34 (1972) ................................................................ 48

*Pederson v. Louisiana State Univ.,*
  213 F.3d 858 (5th Cir. 2000) ................................................ 60

*Schelske v. Austin,*
  694 F. Supp. 3d 254 (N.D. Tex. 2022) ................................. 42

*Singh v. Berger,*
  56 F.4th 88 (D.C. Cir. 2022) ................................................ 49

*Smith v. Young Men's Christian Ass'n of Montgomery, Inc.,*
  462 F.2d 634 (5th Cir. 1972) ................................................ 28

*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ................................................ 52

*Spencer v. Kemna,*
  523 U.S. 1 (1998) .................................................................. 45

*Swann v. Charlotte-Mecklenburg Bd. of Ed.,*
  402 U.S. 1 (1971) .................................................................. 28

*Texas v. Biden,*
  20 F.4th 928 (5th Cir. 2021), *rev'd on other grounds,* 142 S. Ct. 2528
  (2022) .......................................................... 10, 24, 53, 58, 59

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  137 S. Ct. 2012 (2017) ......................................................... 52

*Tucker v. Gaddis,*
  40 F.4th 289 (5th Cir. 2022) ........................................ *passim*

*U.S. Navy SEALs 1-26 v. Biden,*
  4:21-cv-01236-O (N.D. Tex.) .................................................................... 37

*U.S. Navy SEALs 1-26 v. Biden,*
  27 F.4th 336 (5th Cir. 2022) ("*Navy SEALs I*") .................. 24, 42 ,49, 50

*U.S. Navy SEALs 1-26 v. Biden,*
  72 F.4th 666 (5th Cir. 2023) ("*Navy SEALs II*") .......................... *passim*

*United States v. M/Y Galactica Star,*
  13 F.4th 448 (5th Cir. 2021) ................................................................ 68

*United States v. Schrimsher (In re Butts),*
  493 F.2d 842 (5th Cir. 1974) ................................................................ 41

*Yarls v. Bunton,*
  905 F.3d 905 (5th Cir. 2018) ................................................................ 52

## Statutes

10 U.S.C. § 101(a)(4) .............................................................................. 52

28 U.S.C. § 1291 ...................................................................................... 3

28 U.S.C. § 1331 ...................................................................................... 3

28 U.S.C. § 1346 ...................................................................................... 3

28 U.S.C. § 1361 ...................................................................................... 3

28 U.S.C. § 2201(a) .................................................................................. 3

42 U.S.C. § 2000bb-2(1) ......................................................................... 49

Coast Guard Authorization Act (Pub. L. No. 117-263, Div. K, § 11001 et seq.) (2022) ........................................................................................... 13

NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2024, PL 118- , 137 Stat ...................................................................... 12

## Other Authorities

ALCOAST 291/23 (Aug. 11, 2023) ......................................... 56, 57, 63, 64

Brief in Opposition [to Certiorari], *Kendall, et al. v. Doster, et. al.*, No. 23-154, October 18, 2023, at 16, 17………………………………………38, 62

DoD Rescission Guidance, Feb. 24, 2023................................................. 30

NAVADMIN 038/23 (Feb. 15, 2023) ....................................................... 30

NAVADMIN 065/23 (March 7, 2023)....................................................... 30

Ryan Morgan, "Coast Guard to scrutinize members requesting religious exemptions for mandatory COVID vaccine, leaked document reveals," American Military News, Sept. 24, 2021.............................................. 54

Sabrina Singh, Deputy Pentagon Press Sec'y, Dep't of Def., *Press Briefing Tr.* (Dec. 7, 2022) .................................................................................. 12

Statement of Administration Policy on H.R. 2670, July 10, 2023 ......... 58

Statistica, *Active and reserve U.S. military force personnel in 2022, by service branch and reserve component,*.................................................... 8

Stephen Sorace, "Biden thanks Coast Guard rescuer for hurricane heroics days before firing over vaccine policy," Fox News, Oct. 2, 2022 .......................................................................... 13

*The Weaponization of "Disinformation" Pseudo-Experts and Bureaucrats*, Committee on the Judiciary and the Select Subcommittee on the Weaponization of the Federal Government, Nov. 6, 2023, .................. 10

United States Coast Guard, *Notable People*, Vice Admiral William "Dean" Lee ........................................................................................ 8

U.S. Const. Art. I, Sec. 8, Cl. 14 ............................................. 48

## Rules

Fed. R. Civ. P. 60(b) .............................................. 3, 19

Fed. R. Civ. P. 60(b) ................................................. 65

Fed. R. Civ. P. 60(b)(6) ............................................ 66

## Treatises

Wright & Miller, Injunctions, Declaratory Judgments, Other Specific Relief, 13C Fed. Prac. & Proc. Juris. § 3533.1.3 (3d ed.) .................... 46

# INTRODUCTION

"I don't want to discuss your religious beliefs because frankly, they don't matter to me." This is what Plaintiff Lieutenant Junior Grade Alaric Stone's commanding officer told him and other unvaccinated crewmembers shortly before he applied for a religious accommodation from the Coast Guard's COVID-19 vaccine mandate, following months of harassment for his religious beliefs. The commanding officer was parroting the unmistakable messaging from the highest levels of Coast Guard leadership and the Executive Branch.

This case concerns the Coast Guard's failure to place unvaccinated members on equal footing with their vaccinated peers following rescission of its mandate. Rather than following the examples set forth by its sister services under the Department of Defense (DoD), the Coast Guard, uniquely under the command of the Department of Homeland Security (DHS), still refuses to ensure affirmative protection from ad hoc discrimination based on COVID-19 vaccination status, including in deployment and operational assignments. Meanwhile, it retains records of adverse actions and continues to view Plaintiffs and putative class

members as "violat[ors] of [] lawful orders." In that regard, this case is critically distinguishable from *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666 (5th Cir. 2023) ("*Navy SEALS II*"), in which this Court dismissed as moot the Navy's appeal of a class-wide preliminary injunction because the Navy "forbid[s] considering vaccination status for such decisions," and thus "has definitively restored Plaintiffs to equal footing with their vaccinated counterparts through repeated formal policy changes." Not so here. For the same reason, this case is also critically distinguishable from *Kendall v. Doster*, No. 23-154, 2023 WL 8531840 (U.S. Dec. 11, 2023), in which the Supreme Court, in a single-paragraph ruling, directed the lower court to vacate as moot preliminary injunctions against the Air Force. The District Court here overlooked the persisting harms the Plaintiffs uniquely face as service members in the Coast Guard.

This case also concerns the Coast Guard's maneuvers to evade judicial review of its unlawful COVID-19 vaccine mandate and coercive enforcement actions, again distinguishing this case from *Navy SEALs II*, 72 F.4th at 675. Since the beginning of this lawsuit, the Coast Guard has deployed litigation tactics designed to stave off an adverse preliminary decision. The District Court wrongly presumed that the Coast Guard

operated in good faith in its rescission of the mandate and its (far from complete) rescission of some related punitive policies.

Plaintiffs still require relief to put them on equal footing with their vaccinated counterparts and to prevent the Coast Guard from resuming its blatant violation of their religious-liberty rights (and those of the putative class) after this case ends. This Court should reverse.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331, § 1346, and § 1361. ROA.19. It had jurisdiction to issue a declaratory judgment under 28 U.S.C. § 2201(a)). On August 17, 2023, the District Court dismissed Plaintiffs' case and issued a final judgment. ROA.1947-1957. Plaintiffs timely requested relief from final judgment under Fed. R. Civ. P. 60(b) on September 13, 2023. ROA.1958. The District Court denied that motion on September 14, 2023. ROA.1971. Plaintiffs timely filed a Notice of Appeal of the final judgment and the denial of their Rule 60(b) motion on October 10, 2023. ROA.1972. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in dismissing Plaintiffs' claims for permanent injunctive and declaratory relief as moot. Specifically, whether there remains effectual relief a court could grant to protect Plaintiffs' rights under RFRA and the First Amendment.

2. Whether the District Court erred in finding that no exceptions to mootness apply; specifically, voluntary cessation and capable of repetition but evading review.

3. Whether the District Court erred in dismissing Plaintiffs' motion for relief from judgment under Fed. R. Civ. P. 60(b).

## STATEMENT OF THE CASE

### I.  The Coast Guard imposed its vaccine mandate and offered a sham religious accommodation process.

Plaintiffs are three members of the Coast Guard who seek to exercise the same rights they have volunteered their lives to defend. ROA.36-38. Each of them has had a distinguished career. Boatswain's Mate First Class (BM1) Eric Jackson has served his country for over 18 years by defending its shores from human smugglers and drug traffickers. ROA.36-37. Lieutenant Junior Grade (LTJG) Alaric Stone graduated first in his class from the United States Coast Guard Academy

4

and, within just two years of commissioning, was recommended for an assignment to the White House. ROA.35-36. And LTJG Michael Marcenelle, a former Marine with multiple overseas deployments, has been entrusted with training officers of foreign coast guards to enhance international cooperation. ROA.37-38.

These three men are devout Christians who serve our country with honor and dignity, and sincerely believe that receiving a vaccine that was derived from or tested using aborted fetal cell lines in its development— like the COVID-19 vaccines—is contrary to their faith. ROA.39. But when the Coast Guard issued its highly-politicized COVID-19 vaccine mandate in August 2021 (ROA.21) it decided that service members like Plaintiffs, whose faith is integral to their identities and actions, could no longer be tolerated in its ranks.

Promptly after it issued this primary mandate, the Coast Guard issued a barrage of unreasonable enforcement measures designed to coerce Plaintiffs into compromising their religious beliefs or leaving the service. They could not travel more than 50 miles from their homes. ROA.25, 705. They could not take leave. *Id.*; ROA.405. They could not promote, and promotion boards were instructed to categorically deny

them future promotions. ROA.25, 1533. They could not attend necessary training. *Id.* They were denied substantial bonuses, and required to repay previously-granted bonuses. ROA.1376, 1443. The Coast Guard even forced unvaccinated service members to abide by onerous quarantine and mitigation protocols visited only upon them, for instance by confining Plaintiff Stone to his ship during a port call while his vaccinated shipmates could set foot on dry land after a long time at sea. ROA.150. And throughout it all, the Coast Guard created a paper trail—some of which it retains in Plaintiffs' personnel records to this day—flagging them as noncompliant to future commanders. *E.g.,* ROA.262, 317-318, 414, 416.

Yet Plaintiffs persevered. They submitted themselves to a sham religious accommodation process so they could continue serving both their country and their faith, which are incompatible in the eyes of the Coast Guard. ROA.40-41.

That accommodation process indeed proved illusory. Coast Guard chaplains had been instructed to challenge religious objectors to see if the religious objection was a "ruse," while no such instruction was given to those assessing medical or other secular accommodation requests.

ROA.113. Stone's commanding officer, for example, told him and fellow crew members, "I don't want to discuss your religious beliefs because frankly, they don't matter to me." ROA.156. The commanding officer added, "Let me be clear: I will negatively endorse any request for an accommodation that is not a request for a medical accommodation." ROA.1116. As the District Court characterized the sham process, the Coast Guard "shockingly" approved a mere handful of religious accommodations out of roughly 1,200 requests, and only for those already slated to leave the Coast Guard. ROA.419-463, 420, 585, 1948. To achieve this, the Coast Guard categorically denied all initial religious accommodation requests and appeals, relying on boilerplate language that invoked generalized concerns of military readiness, without meaningful consideration of Plaintiffs' individual duties and alternative health protocols. ROA.45.

Realizing that their harsh policies and sham religious accommodation process had not resulted in the complete acquiescence it hoped for (coercing all service members either to submit to the vaccine or to separate from service), the Coast Guard applied additional pressure. ROA.47-49. It began formally reprimanding Plaintiffs for willfully

disobeying orders it deemed "lawful" and initiating discharge proceedings on the pretextual basis of "lack of worldwide deployability." *Id.*

Retired Vice Admiral Lee—a highly respected former senior Coast Guard officer[1]—testified without rebuttal that because the Coast Guard is significantly smaller than the other military branches,[2] it is a uniquely tight-knit community where service reputation—the assessment of service members' character and abilities beyond what formal records reflect—is especially important. ROA.1772-72. Personnel decisions are based in large part on service reputation. *Id.* Even if all documentation of a service member's religious accommodation request and any subsequent punishments were completely expunged from a service member's record (which they haven't been here), the member's service reputation would still risk being tainted, resulting in "concrete,

---

[1] https://www.history.uscg.mil/Browse-by-Topic/Notable-People/All/Article/2195858/vice-admiral-william-dean-lee/

[2] There are fewer than 50,000 total active duty and reserve members in the Coast Guard. ROA.1772. By comparison, the Army has a total of more than 637,800 total members (active duty and reservists); the Army National Guard more than 329,700 members; the Navy more than 395,200 members; the Air Force more than 388,400 members; and the Marines more than 207,100 members. https://www.statista.com/statistics/232330/us-military-force-numbers-by-service-branch-and-reserve-component/.

predictable harms to their career." ROA.1773. Indeed, "Coast Guard leadership *still* considers these service members to have disobeyed a lawful order" (notwithstanding service members' federal religious liberty protections). ROA.1774 (emphasis in original). However, Coast Guard commanders and service members as a whole are required to abide by and respect any civil-court order that declares unlawful a Coast Guard order or policy. ROA.1773. Thus, a court order declaring that service members did not in fact violate a lawful order would go a long way to rehabilitate Plaintiffs' and over 1,200 putative class members' service reputations. ROA.1773-74.

The Coast Guard also uniquely falls under the highly politicized DHS, while the other service branches are under the DoD. ROA.1920. Under the present Administration, DHS's "gamesmanship" in its decisionmaking is well-established, and there is ever-growing evidence of DHS's secret and systematic violation of citizens' First Amendment rights, including in connection with the COVID-19 vaccines. ROA.1513. *See also*, *e.g.*, *Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023) (enjoining DHS and other governmental agencies and groups from censoring objections to COVID-19 vaccines and other matters), *cert. granted sub*

*nom. Murthy v. Missouri*, No. 23-411, 2023 WL 6935337 (U.S. Oct. 20, 2023); https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/EIP_Jira-Ticket-Staff-Report-11-7-23-Clean.pdf (Congressional Committee report regarding the secret censorship, by DHS and other governmental agencies and groups, of objections to the COVID-19 vaccines and other matters); *see also Texas v. Biden*, 20 F.4th 928, 964 (5th Cir. 2021) ("DHS repeatedly exhibited gamesmanship in its decisionmaking."), *rev'd on other grounds*, 142 S. Ct. 2528 (2022).

## II.   Plaintiffs promptly took action to protect their and fellow service members' religious-liberty rights.

After receiving final denials of their religious accommodation requests and upon learning of their own imminent discharges, Plaintiffs promptly took action. On September 16, 2022, they initiated this putative class action suit on behalf of themselves and roughly 1,200 of their brothers and sisters in arms who had also requested religious accommodations from the Coast Guard's vaccine mandate, seeking relief from the mandate and the attendant negative consequences of asserting religious objections to it. ROA.53, 82-83.

On the same day they filed this lawsuit, Plaintiffs filed Motions for a Temporary Restraining Order (TRO), for Preliminary Injunction, and for class-wide relief. ROA.93-96. The District Court immediately denied the Motion for TRO "**without prejudice**." ROA.767 (emphasis in original). In a transparent attempt to avoid issuance of preliminary injunction, the Coast Guard thereafter agreed to voluntarily delay separation processes for Plaintiffs pending resolution of the Motion for Preliminary Injunction. ROA.794-95. The Coast Guard also agreed to provide relief, albeit temporary and partial, for any putative class members facing imminent discipline whom Plaintiffs could identify. ROA.794-95, 1135-36, 1144-45, 1230-32. The Coast Guard refused any sort of relief for hundreds of other putative class members whom Plaintiffs did not know by name—despite the Coast Guard itself knowing their names. *Id.*

### III.   The Coast Guard voluntarily rescinded its mandate but, uniquely among the service branches, failed to make unvaccinated Coast Guard service members whole.

While Plaintiffs' Motion for Preliminary Injunction remained fully briefed and pending, the military's COVID-19 vaccine mandates grew politically untenable, given the many court orders enjoining the other

military branches (but not the Coast Guard) from enforcing the vaccine mandate against military branches (*see, e.g.*, *U.S. Navy SEALs* and *Doster* discussed *infra*), the worsening military-wide recruiting and retention crisis (ROA.18, 51, 61, 73, 163-164, 270-272), and the growing evidence that the vaccines are not altogether safe or effective and may in fact be detrimental to service members' health (ROA.1515). Despite DoD leadership's opposition to rescinding vaccine mandates (ROA.1926),[3] in December 2022 Congress passed and the President signed the 2023 National Defense Authorization Act (NDAA), which required only the "Secretary of Defense" (*i.e.*, the DoD) to rescind its mandate within 30 days. ROA.1349-1351. The Secretary of Defense did so the next month (on January 10, 2023). ROA.1778. The Coast Guard, falling under the DHS, was not obligated by the NDAA to take any actions at all.[4]

_____

[3] Sabrina Singh, Deputy Pentagon Press Sec'y, Dep't of Def., *Press Briefing Tr.* (Dec. 7, 2022), perma.cc/EXQ2-FNBN (stating that the Secretary of Defense "support[ed] continuing the vaccine mandate in the NDAA").

[4] The latest (2024) NDAA further confirms the 2023 NDAA vaccine mandate rescission provision did not apply to the Coast Guard: the COVID-19 vaccine provision of the 2024 NDAA, unlike the one in the 2023 NDAA, expressly applies to the "Coast Guard." *See* NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2024, PL 118- , 137 Stat at § 527(b) (requiring discharge characterization reviews for former members of "covered armed forces," defined to include the Coast Guard), § 528 (again defining "covered armed forces" to include the Coast Guard and requiring the Secretary of Defense to coordinate with the

ROA.1349-1351. And the 2023 Coast Guard Authorization Act (Pub. L. No. 117-263, Div. K, § 11001 et seq. (2022)) did not direct the rescission of (or even mention) the Coast Guard's vaccine mandate. ROA.1851. But, in an effort to avoid being the only service left defending an increasingly unpopular and legally indefensible mandate,[5] the Coast Guard voluntarily aligned itself with the DoD and rescinded its primary mandate.[6] ROA.1776-77, 1780.

Critically, and unlike the DoD, the Coast Guard's rescission effectively (and uniquely) classified non-separated service members who

---

"Secretaries of the military departments" *and* with the separate and distinct Secretary in charge of the Coast Guard "when [it] is not operating as a service in the Navy" to offer reinstatement to former members discharged over the vaccine mandates). https://www.congress.gov/118/bills/hr2670/BILLS-118hr2670enr.pdf.

Also, acceding to the Biden Administration's demand, the 2024 NDAA **omits** a key provision present in an earlier version of the 2024 bill that prohibited "any adverse action . . . on the basis that such member refuses to receive a vaccination against COVID-19." *Id.*; ROA.1925. The Administration had objected that that provision would constrain it from "again requir[ing] [COVID-19] vaccination." ROA.1926.

[5] *See, e.g.*, Stephen Sorace, "Biden thanks Coast Guard rescuer for hurricane heroics days before firing over vaccine policy," Fox News, Oct. 2, 2022, https://www.foxnews.com/politics/biden-thanks-coast-guard-rescuer-hurricane-heroics-days-before-firing-vaccine-policy.

[6] The Coast Guard accidentally promulgated—and then retracted—its initial rescission order on January 9, 2023, the day *before* the Secretary of Defense issued his rescission for the Army, Navy, Marines, Air Force, and Space Force (on January 10, 2023). ROA.1776-79. The Coast Guard promulgated its final rescission order on January 11, 2023—a naked (and failed) attempt to promote the appearance that its actions were involuntary. ROA.1780.

had not complied with the mandate as "*violat[ors] of the lawful general orders* to become vaccinated against COVID-19." ROA.1780 (emphasis added). The Secretary of Defense's rescission, in contrast, merely explained that he was "required" by Congress to rescind the mandate and thus obligingly did so. ROA.1778. He (unlike the Coast Guard Commandant) also praised religious liberty and the right of "Service members" to exercise it. ROA.1779. He did not label non-separated members as violators of lawful orders—again, unlike the Coast Guard. ROA.1778-80.

But the Coast Guard never fully aligned itself with the DoD services' efforts to set unvaccinated and vaccinated servicemembers on equal footing—and that remains true to this day. Over the course of several weeks after they issued their respective rescission orders, the DoD (and service branches thereunder) and the Coast Guard separately issued various guidance memoranda. The Coast Guard's guidance addressed some service members' concerns (*e.g.*, halting separation proceedings) but far from all of their mandate-imposed injuries. Specifically:

- January 2023: The Coast Guard rescinded mandatory restrictions on assignments, training, certain promotions, and command, and halted separation proceedings. ROA.1381-89. But the Coast Guard effectively maintained the right to **consider vaccination status as a factor, even a significant factor, in making personnel decisions**. *Id.*; ROA.1376.

- February 4, 2023: The Coast Guard directed removal of vaccine-related CG-3307s (negative service-record remarks) for all members sometime before the end of the year ("not later than 31 Dec 2023"). ROA.1452.

- February 27, 2023: Apparently realizing that waiting until December 31 to remove CG-3307s (ROA.1452) was manifestly indefensible, the Coast Guard stated that it now planned to remove certain CG-3307s by the end of March 2023. ROA.1487.

- February 2023: The **DoD** forbade "DoD Component heads and commanders" from "consider[ing] a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions." ROA.1792 (emphasis added). DoD components complied. For example, the Navy issued guidance

specifically precluding consideration of vaccination status as a factor in making personnel decisions. *Navy SEALs II*, 72 F.4th at 671. But the **Coast Guard has not issued comparable guidance**. Therefore, the Coast Guard, unlike the other service branches, can still decide "deployment, assignment, and other operational decisions" based solely on vaccination status.

- February-March 2023: The Coast Guard removed some but **not all vaccine-related CG-3307s**. For example, the Coast Guard refused and continues to refuse to remove a CG-3307 in Stone's record that refers to his unvaccinated status. ROA.1853-57. Where the Coast Guard did remove CG-3307s, it replaced them with another injurious document: a memorandum from the Coast Guard's Acting Assistant Commandant for Human Resources that **references the CG-3307s themselves and noncompliance with the mandate** (the "Navarro memo"). ROA.1452, 1503. By contrast, the Navy, for example, "eliminated *any* remaining distinctions between vaccinated and unvaccinated personnel." *Navy SEALs II*, 72 F.4th at 671 (emphasis added). Stone's remaining CG-3307 and the Navarro

memorandum portray Plaintiffs as service members who violated a lawful order in the mind of anyone with access to career records—including commanders, boards, and even personnel specialists. ROA.1853, 1536-37, 1773.

- To date, the Coast Guard has not remedied a **downgraded performance report** Stone received due in essential part to an ad hoc denial of a necessary training based on his vaccination status. ROA.1527-29. Absent relief, this will indisputably have lasting effects on his career. *Id.*; ROA.1772-74.

- To date, Plaintiff Marcenelle has not been awarded a nearly automatic **promotion** to Lieutenant solely due to his vaccination status. The lost pay from the missed promotion totals nearly $2,000 per month, beginning in April 2023. ROA.1534.

- Plaintiffs and other unvaccinated Coast Guard service members are still subject to the requirement that they must **quarantine** if they contract COVID-19 such that they are not available to serve during the period of quarantine, while vaccinated service members are not subject to this requirement. ROA.1529-30. The

Coast Guard has not rescinded this discriminatory policy and has given no indication that it will ever rescind it. *Id.* In fact, by requiring vaccination checks as part of a mandatory, annual safety assessment checklist, the Coast Guard still retains an enforcement mechanism for the mandate. ROA.1530. By contrast, unvaccinated Navy service members can no longer be asked about their vaccination status or be subject to quarantine. ROA.1924.

Thus, unlike DoD, the Coast Guard does not categorically forbid consideration of vaccination status as a factor, even a substantial factor, in making personnel and deployment decisions, while continuing to document alleged noncompliance in members' service records and otherwise discriminate against unvaccinated service members. ROA.1376, 1792, 1853-57, 1452, 1503, 1536-37, 1527-30, 1772-74, 1924. Absent court-ordered relief, these circumstances will have a lasting negative impact on Plaintiffs' careers. ROA.1772-74. At bottom, while the Coast Guard rescinded the mandate and halted separation proceedings along with service-wide mandatory discrimination against the unvaccinated, it has not—like the other branches—adopted policies fully

restoring unvaccinated Coast Guard service members such as Plaintiffs to equal footing with their vaccinated counterparts.

## IV.  The District Court dismissed the case and denied Plaintiffs' Rule 60(b), and Plaintiffs appealed.

In August 2023, eleven months after Plaintiffs filed this case and moved for preliminary injunctive relief, and five months after Defendants moved to dismiss the case, the District Court issued its first substantive order: it granted the motion to dismiss (implicitly denying the motions for preliminary injunctive relief and for class-wide relief). ROA.1947-1956. In the order, the District Court noted that the Coast Guard "shockingly" only granted requests by service members already slated to leave the Coast Guard but held the case was moot. ROA.1948. Despite the Coast Guard's failure to restore Plaintiffs to equal footing with their vaccinated counterparts, the District Court declined to provide the relief necessary. ROA.1956. The District Court did not address the Coast Guard's failure to adopt affirmative protections parallel to those of the DoD. ROA.1947-1956.

On September 13, 2023, Plaintiffs filed a motion for relief from judgment under Fed. R. Civ. P. 60(b). ROA.1958-60, 1964-69. The motion highlighted a new policy authorizing *automatic restoration* of missed

promotions and advancements for those service members who were *separated* because of its illegal COVID-19 vaccine mandate and are returning to service, while making no such provision for Plaintiffs and others who *avoided separation* while remaining unvaccinated. ROA.1966-68. The day after Plaintiffs filed this motion, September 14, the District Court denied it based solely on a general reference to the August 2023 dismissal order. ROA.1971. Plaintiffs then appealed to this Court both the August 2023 dismissal order and the September 2023 denial of the Rule 60(b) motion. ROA.1972.

In the course of the litigation, Plaintiffs informed the District Court that on the Coast Guard's official public website ("Mandatory Vaccination for Military Members FAQs") the Coast Guard continued to claim, long after it issued its voluntary rescission order, that the vaccine was still "mandatory" for service members. ROA.1866-67, 1928-29. The website continued to claim this at least through September 22, 2023—more than eight months after the Coast Guard rescinded the mandate, and some

time after the District Court dismissed the case.[7] The site only recently

became inactive.[8] Presumably the Coast Guard removed it in anticipation

of this Court hearing the appeal.

## SUMMARY OF THE ARGUMENT

1.    Unlike the DoD's service branches, the Coast Guard (under

the authority of DHS) has failed to show it has "completely and

irrevocably eradicated" the collateral consequences of its COVID-19

vaccine mandate, as it must for this case to be moot. *Los Angeles Cnty. v.*

*Davis*, 440 U.S. 625, 631 (1979).

Most notably, although the Coast Guard has issued some post-

rescission guidance canceling *mandatory* discrimination against

Plaintiffs and the putative class based on COVID-19 vaccination status,

it has refused to issue policies *affirmatively protecting* them from *ad hoc*

discrimination in deployment, assignment, and operational decisions. In

contrast, the DoD has explicitly adopted such protection for its service

---

[7]
https://web.archive.org/web/20230922041844/www.uscg.mil/Coronavirus/Informatio
n/Article/2753898/mandatory-vaccination-for-military-members-faqs/ (archived as of
Sep. 22, 2023).
[8]http://www.uscg.mil/Coronavirus/Information/Article/2753898/mandatory-
vaccination-for-military-members-faqs/ ("Error" message).

members in the Air Force, Army, Marines, Navy, and Space Force—
which this Court deemed "critical" in finding appellate mootness in *Navy
SEALs II*. 72 F.4th at 673. The Supreme Court's recent vacatur on
mootness grounds in *Kendall*, 2023 WL 8531840, at *1 (Air Force) is
inapposite for the same reason. Indeed, the Coast Guard has previously
boasted in this litigation about its independence from the DoD (after the
Inspector General exposed the DoD's sham religious accommodation
process). By the Coast Guard's own admission, therefore, the DoD's
protections do not govern here. (Indeed, Stone was previously denied a
required training on an ad hoc basis despite a formal policy *allowing*—
but not ensuring—participation in necessary trainings for unvaccinated
service members; ROA.1528).

The District Court entirely failed to acknowledge this ongoing
harm, which alone prevents mootness. The same error infected its
rejection of additional collateral harms—such as the Navarro memo (a de
facto "scarlet letter" on Plaintiffs' permanent records); Marcenelle's
prolonged delay in obtaining an otherwise automatic early promotion;
and Stone's evaluation downgrade with permanent career-damaging
effects. The lack of affirmative protection from ad hoc discrimination

renders these additional collateral harms real and irreparable, contrary to the District Court's conclusion.

The District Court also wrongly held that reputational harm does not sustain Article III jurisdiction for purposes of declaratory relief. *Cf. Meese v. Keene*, 481 U.S. 465 (1987). This Court has recognized that reputational harm "of sufficient immediacy and reality," inflicted by a since-rescinded Army reprimand, justifies a declaratory judgment. *Connell v. Shoemaker*, 555 F.2d 483 (5th Cir. 1977). Here, the Coast Guard's own order rescinding the mandate effectively characterized unvaccinated members as "violat[ors] of [] lawful general orders," exacerbating the ongoing harm to Plaintiffs' and putative class-members' uniquely important "service repetition" in the unusually small Coast Guard, as confirmed by Admiral Lee's unrebutted testimony. The District Court simply ignored *Connell* and these ongoing harms. The District Court also wrongly relied on the doctrine of collateral *legal* consequences (where reputational harm is not cognizable), rather than the doctrine of collateral *practical* consequences (where reputation still matters)—a distinction this Court recognized in *Connell*.

The District Court also erred in holding that Plaintiffs' claims are not justiciable. This Court confirmed in *U.S. Navy SEALs 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) ("*Navy SEALS I*") and *Navy SEALS II* that Plaintiffs' claims for relief from even the adverse effects of the military's COVID-19 vaccination mandate are justiciable under RFRA and the First Amendment.

These Coast Guard-specific collateral consequences prevent mootness.

2.     The mootness exceptions of voluntary cessation and capable-of-repetition-but-evading-review also apply. The 2023 NDAA directed only the "Secretary of Defense" to rescind the mandate, thus the Coast Guard's rescission was voluntary. So too are any of its rescissions of *some* adverse actions, which were not required by the NDAA. The Coast Guard is not entitled to the presumption of good faith that *some* (but not all) of this Court's precedents apply to government defendants in voluntary-cessation cases, *see Navy SEALs II,* given manifold evidence of the Coast Guard's litigation posturing. *Accord Texas*, 20 F.4th at 964. Even with a presumption of good faith, it has failed to make "absolutely clear" that its challenged conduct is not reasonably likely to recur. *Mesquite v.*

24

*Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). It "has not even bothered" to provide Plaintiffs "any assurance that it will permanently" refrain from issuing a similar mandate, *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022); or halt *ongoing* adverse effects; or cease from its pattern and practice of refusing to provide *individualized* review of religious accommodations requests, and from relying only on *generalized interests* in denying them—the *procedural* "gravamen" of Plaintiffs' class-action claim.

This case also meets the capable-of-repetition exception because the Coast Guard's gamesmanship prevented Plaintiffs from obtaining full review, and there is a reasonable likelihood of the same harms recurring.

3.    The District Court also wrongly denied Plaintiffs' Rule 60(b) motion based on new evidence that the Coast Guard is timely restoring *previously separated* service members to full service following the mandate's rescission, while continuing to require Plaintiffs and non-separated putative class members to languish without any similar assurances.

This Court should accordingly reverse.

## ARGUMENT

### I.   Standard of Review.

"This Court reviews questions of federal jurisdiction, including mootness, de novo." *Tucker*, 40 F.4th at 292.

"Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### II.   The Coast Guard uniquely fails to show mootness.

"[A] case becomes moot only when it is *impossible* for a court to grant *any* effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (emphasis added) (internal quotes omitted). Thus, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (internal quotes omitted). The party asserting mootness "bears the burden" of proving it. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993).

Plaintiffs' case is not moot. An injunction and/or declaratory judgment would accomplish what the Coast Guard will not on its own (unlike the other service branches): eradicate the ongoing consequences of its now-rescinded mandate, as it must to demonstrate mootness.

## A.    Ongoing collateral consequences of the mandate prevent mootness.

This Court recognizes that "[e]ven if the plaintiff's primary injury has been resolved, the collateral consequences doctrine serves to prevent mootness when the violation in question may cause continuing harm and the court is capable of preventing such harm." *Daily v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998). Or, as the Supreme Court has put it, "interim relief or events" must have "completely and irrevocably eradicated the effects of the alleged violation" for a case to be moot. *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979).[9] *See also Boudreaux v.*

---

[9] *Davis* involved the doctrine of voluntary cessation, which is generally considered an "exception" to mootness. *See Navy SEALs II*, 72 F.4th at 673. But ongoing collateral effects are more properly an issue of mootness per se, as they render it possible for a court to grant some effectual relief. *See id.* at 671-73. And indeed, the Supreme Court's (and this Court's) more recent voluntary cessation cases focus solely on the likelihood of a past harm's *future recurrence*, as a true exception to mootness, rather than on extant consequences. *See, e.g.*, *Already, LLC v. Nike*, 568 U.S. 85, 92 (2013) ("That is the question the voluntary cessation doctrine poses: Could the allegedly wrongful behavior reasonably be expected to recur?"); *see also Freedom From Religion*

*Louisiana State Bar Ass'n*, 86 F.4th 620, 630-31 (5th Cir. 2023) (even where some disputed issues are moot, "an ongoing dispute" is not).

This rule makes even more sense given the Supreme Court's longstanding recognition that "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *see also Smith v. Young Men's Christian Ass'n of Montgomery, Inc.*, 462 F.2d 634, 649 (5th Cir. 1972) ("A court of equity has unquestioned wide powers to provide effective means for enforcement" of civil rights laws "and to eradicate the effects of past discrimination.").

Here, the Coast Guard still refuses to take the same remedial actions this Court deemed "critical" in *Navy SEALs II*.

---

*Found. v. Abbott*, 58 F.4th 824, 834 (5th Cir. 2023) (same). Thus, this brief considers collateral consequences as a question of mootness per se.

1. **The Coast Guard uniquely refuses to affirmatively protect Plaintiffs and the putative class from discrimination in deployment and other assignments.**

The District Court wrongly held this case is moot because the Coast Guard rescinded several mandate-implementing policies that had required Plaintiffs to become vaccinated. ROA.1948. The District Court broadly asserted, without specifics, that the Coast Guard "issued formal policies that *prohibit* new adverse actions on the basis of vaccination status." *Id.* (emphasis added). But that is simply incorrect.

Unlike the other service branches, the Coast Guard has not actually issued policies ensuring Plaintiffs have *affirmative protection* from *ad hoc discrimination* based on their COVID-19 vaccination status going forward, including in deployments, promotions, and other assignments. Yet their Complaint seeks precisely such protection. ROA.57 at ¶¶292-93 (pleading that denial of "schooling, promotion, and assignments" based on their COVID-19 vaccine status "can have permanent and lasting effects on the careers of service members," and thus constitutes a substantial burden on their religious exercise under RFRA and the First Amendment).

Recently, this Court deemed such *affirmative protection* (provided by the Navy) as "[c]ritical" in finding appellate mootness in *Navy SEALs II*. 72 F.4th at 673 ("Critically, the Navy has also *ruled out* using vaccination status to deny deployment eligibility, training opportunities, and assignments." (Emphasis added)). As this Court recognized: "No fewer than three binding policies now *forbid* considering vaccination status for such decisions" in the Navy. *Id.* (emphasis added) (citing NAVADMIN 038/23 (Feb. 15, 2023); Feb. 24, 2023, DoD Rescission Guidance; and NAVADMIN 065/23 (March 7, 2023)). The same thing distinguishes the Supreme Court's recent mootness ruling in *Kendall*, 2023 WL 8531840 (Air Force), since one of the aforesaid binding policies is from the DoD itself and applies to *all service branches* under its authority (including the Air Force). ROA.1902. As the DoD policy instructs: "Other than to comply with DoD Foreign Clearance Guidance, *DoD Component heads and commanders will not* . . . consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions." *Id.* (emphasis added).

Meanwhile, the Coast Guard has boasted in this litigation of its independence from the DoD. *See* ROA.843, 867 (arguing Inspector

General report exposing the military's sham religious accommodation process "says nothing about the Coast Guard, which is part of the Department of Homeland Security and therefore [allegedly] outside of the report's purview"; "the Coast Guard is not part of the Department of Defense").

The District Court's opinion simply ignored this "critical" distinction between the Coast Guard's policies (or lack thereof) and those at issue in *Navy SEALs II*—despite Plaintiffs having specifically raised this issue to the Court. ROA.1499 ("The Coast Guard has not issued comparable guidance" to the DoD's February 24 policy); ROA.1923 ("[T]he Coast Guard . . . still has not issued similar guidance forbidding commander discretion on deployment eligibility for unvaccinated Coast Guard members.").

Yet the Coast Guard has shown it knows how to do so. On January 25, 2023, the Coast Guard issued a guidance policy for active duty *enlisted* members (not for *officers* like Plaintiffs Stone and Marcenelle), stating both that "refusal of the COVID-19 vaccination alone does not *require* the withholding of *advancement*," *and* that commands "*shall remove [ongoing] withholding[s]*" of advancements that were based solely

on COVID-19 vaccine status. ROA.1897 at ¶4.A (emphasis added); *see also* ROA.1899 at ¶4.A. (same for *reserve* enlistees). But the same policy notably omits language of affirmative protection with respect to "Assignments" (i.e., "assignment, boards and panels, and training[s]"). ROA.1896 at ¶3. Nor does it include any such language in its separate guidance document for "Active Duty Officers" like Plaintiffs Stone and Marcenelle. ROA.1898.

To be sure, the Coast Guard argued before the District Court that it promulgated formal policies "that preclude COVID-19 vaccination status from inhibiting service in the Coast Guard." ROA.1871. But its primary evidence was the aforesaid affirmative protections regarding "*advancements*" (not "assignments") for *enlistees* (not for Active Duty officers like Plaintiffs Stone and Marcenelle). (ROA.1871-72.) The District Court erred in relying on such evidence to dismiss Plaintiffs' claims.

Accordingly, the Coast Guard has failed to demonstrate it has "definitively restored Plaintiffs to equal footing with their vaccinated counterparts," as required to show mootness. *Navy SEALs II*, 72 F.4th at 673.

It also brings into clearer relief other ongoing collateral consequences that likewise prevent mootness, such as:

- Replacing Plaintiffs' negative CG-3307s with the Navarro memo documenting (without explanation) that vaccine-related CG-3307s have been removed from their (and putative class members') respective records. ROA.1536 at ¶24; ROA.1790.

- Retaining CG-3307s documenting vaccination status and discriminatory health protocols, and refusing to remove them when requested. ROA.1923

- Downgrading Stone from "*one of few distinguished officers*" to "*center of mass*" based on *ad hoc denial* of a required training for his current position because of his vaccine status. ROA.1527-28 at ¶¶4-5 (emphasis added).[10]

- Marcenelle still has not been awarded a nearly automatic promotion to Lieutenant solely due to his vaccination status (as of this filing). He has merely been allowed to apply for a retroactive promotion from a Special Selection Board. ROA.1927-28.

- Ongoing discriminatory quarantine and vaccine checks policy. ROA.1529-30. *Cf.* ROA.1924 (Navy specifically forbids such discrimination).

---

[10] Stone specifically objected to the discretionary cancelation of his training orders, reminded his supervisor that he needed the training, and provided his command the appropriate policy references expressly "*allowing* unvaccinated personnel to attend training 'specifically required for their assignment'"—to no avail. ROA.1528 at ¶5 (emphasis added). **This is a concrete example of the ongoing consequences of policies merely *allowing* the unvaccinated to generally participate (Coast Guard), versus those *prohibiting* discrimination based on vaccination status (DoD branches)**.

These are exactly the types of harms that prevent mootness under longstanding precedent. For example, the Supreme Court found non-mootness where a city rescinded a racially discriminatory hiring policy and restored employees to their former positions, because "those employees have not been *made whole*," in part given that "*seniority [] has not been restored.*" *Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984) (emphasis added); *accord Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) (emphasis added) ("The new ordinance may disadvantage [plaintiffs] to a lesser degree than the old one, but . . . it disadvantages them in the same fundamental way."). And this Court held a case wasn't moot where a prison's change in policy merely allowed the plaintiff inmate to *apply* for secondary religious services, without actually ensuring those services would be granted to him per his requested relief under the Religious Land Use and Institutionalized Persons Act (RLUIPA), *Tucker*, 40 F.4th at 292, the "sister statute" to RFRA, *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).

The same is true here. Plaintiffs' complaint sought full participation in the service notwithstanding their vaccination statuses—

hardly satisfied by the ersatz second-class status the Coast Guard is now providing. ROA.57 at ¶¶292-294. That Plaintiffs were seeking such relief is confirmed by their proposed "consent to a partial *stay*" of their requested preliminary injunctive relief with respect to "deployment, assignment, and other operational decisions," consistent with the Supreme Court's partial stay in *Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022). ROA.95 at ¶3 (emphasis added).

But the Coast Guard—unlike the DoD—still refuses to ensure such relief. Instead, it subjects Plaintiffs and the putative class to ongoing "disadvantages" based on their vaccination statuses (e.g., missed and long-delayed promotions; a permanently-documented evaluation downgrade; scarlet-letter record retentions; tarnished service reputation; etc.). *See City of Jacksonville*, 508 U.S. at 662. To the extent it has merely allowed Plaintiffs *to apply* for their requested relief (or simply hope they are not disadvantaged on an ad hoc basis going forward), *without actually ensuring the make-whole relief they requested*, the case is not moot. *See Stotts*, 467 U.S. at 571; *Tucker*, 40 F.4th at 292. The Coast Guard has plainly failed to show otherwise.

**2.    The District Court's reasons for rejecting several of these harms were demonstrably erroneous.**

The District Court's failure to address Plaintiffs' lack of affirmative protection also led to its erroneous rejection the other aforementioned collateral harms that prevent mootness.

As to ongoing "administrative remarks"—again, de facto scarlet letters that Plaintiffs are "violat[ors] of lawful general orders"—the District Court stated that any harm to their service reputation is too speculative. ROA.1952. But that ignores the non-reputational *ongoing lack of protection from ad hoc discrimination*—as Stone previously experienced in a sua sponte denial of a needed training based explicitly on his vaccine status (despite a then-existing policy formally allowing him to participate). ROA.1528 at ¶5. The District Court also credited the Coast Guard's conclusory assertion that the Navarro memo is simply "in accordance with how the military corrects its records." ROA.1952 (citing ROA.1810 at ¶4). But as Plaintiffs informed the District Court, the Navy has *fully expunged* any records of its service members' lack of COVID-19 vaccination. ROA.1923 (citing *U.S. Navy SEALs 1-26 v. Biden*, 4:21-cv-01236-O (N.D. Tex.), ECF 230-2 at 2). The Coast Guard has given no reason why it cannot do so as well.

36

As to Marcenelle's missed and delayed promotion, the District Court held it's sufficient that he is being given consideration by a Special Selection Board. ROA.1952. But the District Court again ignored the critical lack of affirmative assurance that the Special Selection Board (or any future promotion boards) will not consider Marcenelle's vaccination status in rendering its decision. The Navy again provides a contrasting model, announcing in February 2023 that "future selection board convening orders and precepts [must] include language *ensuring the boards do not consider any adverse information related solely to COVID-19 vaccine refusal* in cases in which an accommodation was requested." *SEALs*, 4:21-cv-01236-O, ECF 230-2 at 2-3 (emphasis added).) The District Court also relied on the Supreme Court's pre-RFRA decision in *Orloff v. Willoughby*, 345 U.S. 83, 92 (1953) to find Marcenelle's requested relief non-justiciable—but that's wrong for the reasons discussed *infra* regarding justiciability.[11]

The District Court also rejected the relevance of Stone's evaluation downgrade. ROA.1952. But, once again, its analysis ignored the "critical"

---

[11] The District Court deemed Stone's evaluation downgrade as likewise non-justiciable, but that is again wrong for reasons discussed *infra*.

lack of affirmative protection from discrimination based on vaccination status (and already-incurred downgrades flowing from that status). Indeed, Stone testified—without rebuttal—that his downgraded evaluation will be a permanent part of his career record as evidence of alleged inconsistent performance. ROA.1528 at ¶7.

Thus, the District Court erred in finding mootness in the teeth of these ongoing consequences.

Finally, it's true that in *Doster* the Supreme Court found mootness despite the Air Force service members' argument that an internal database continued to identify those who did not comply with the mandate. *See Kendall, et al. v. Doster, et. al.*, No. 23-154, Brief in Opposition [to Certiorari], October 18, 2023, at 16, 17; *Kendall*, 2023 WL 8531840. But again, the DoD has specifically ensured that commanders cannot take such information into consideration in deployment, assignment, and operational decisions. ROA.1902. The Coast Guard has issued no such assurances.

Accordingly, the foregoing ongoing collateral consequences prevent mootness.

**B.  At minimum, Plaintiffs' claims for declaratory relief are not moot.**

This Court has recognized that lingering reputational injuries inflicted by a rescinded government action (by the Army, no less), which have continuing practical consequences "of sufficient immediacy and reality," keep a claim "live" for purposes of declaratory relief. *Connell*, 555 F.2d at 486. That principle squarely applies here. Plaintiffs were deemed violators of "lawful orders" under the mandate—and the Coast Guard expressly (and uniquely) *reiterated* that characterization in rescinding its mandate. ROA.1894 at ¶2.

The District Court found Plaintiffs' reputational injuries non-cognizable (ROA.1952), but that was error in two ways: (1) it ignored the *ongoing* nature of this reputation-damaging characterization, as confirmed by Admiral Lee's unrebutted testimony regarding the practical importance of "service reputation" to effective service in the Coast Guard; and (2) it relied on a line of cases involving the doctrine of collateral *legal* consequences (where reputational injuries are irrelevant), as distinct from the doctrine of collateral *practical* consequences (where reputation still matters)—a distinction this Court recognized in *Connell*.

### 1. Plaintiffs' ongoing characterization as "violat[ors] of lawful general orders."

It is blackletter law that reputational harm is a cognizable injury for purposes of Article III jurisdiction. *See Meese*, 481 U.S. at 473-77; *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 140-41 (1951). Plaintiffs' ongoing reputational harms here are thus cognizable.

In *Connell*, an Army base sanctioned the owner of a nearby apartment complex for allegedly engaging in racial discrimination against its soldiers. 555 F.2d at 485. The plaintiffs (the apartment owner and his enterprising brother) brought suit seeking injunctive and declaratory relief, after which the Army lifted its sanction and then claimed mootness. *Id.* This Court held the claim for declaratory judgment was not moot because the plaintiffs had financial stakes in various nearby retail businesses, and "a favorable public image is vital to the success of such enterprises." *Id.* at 487. This Court recognized that "the imputation of bigotry in the Army's widely publicized sanctions against appellants could not but harm their reputations, and, concomitantly, their livelihoods with clientele both black and white." *Id.* It also noted the apartment owner held local civic and elected political positions, and thus "whatever aspirations he might yet harbor have almost certainly been

undercut by the same stigma." *Id.* (citing *United States v. Schrimsher (In re Butts)*, 493 F.2d 842, 844 (5th Cir. 1974)). This Court thus held that Plaintiffs' reputational harms were sufficient to preserve their claim for declaratory relief. *Id.*

The same is again true here. Admiral Lee's unrebutted testimony confirmed that "service reputation" is uniquely important in the Coast Guard given its much smaller membership compared to the DoD's service branches. ROA.1772. Like the reputational harm to plaintiffs' business and political interests in *Connell*, Admiral Lee confirmed that Plaintiffs' reputations are critical to their career progression in the Coast Guard, particularly for competitive promotions to higher ranks. ROA.1772-1775. And critically, despite the Coast Guard's rescission of its mandate, Admiral Lee confirmed that "Coast Guard leadership *still* considers these service members [Plaintiffs and the putative class] to have disobeyed a lawful order," and that "there is a very strong likelihood" it "will result in fewer opportunities and fewer promotions." ROA.1774 at ¶¶13, 14 (emphasis in original). He also confirmed that "Coast Guard commanders . . . are required to abide by and respect any civil-court order that declares unlawful a Coast Guard order or policy." ROA.1773-74 at ¶¶11-13.

Plaintiffs' injury is exactly the kind of reputational harm of "sufficient immediacy and reality to warrant the issue of a declaratory judgment" under *Connell*. 555 F.2d at 486. Unlike the other service branches, only the Coast Guard's "shocking" and categorical denial of all religious accommodations under its mandate, while allowing numerous medical and "administrative" exemptions for those already on their way out, has *not* been deemed a violation of RFRA. *See Navy SEALs I*, 27 F.4th 336; *Colonel Fin. Mgmt. Officer v. Austin*, 622 F. Supp. 3d 1187 (M.D. Fla. 2022) (Marines); *Doster v. Kendall*, 2022 WL 2974733 (S.D. Ohio July 27, 2022), *aff'd*, 53 F.4th 398 (6th Cir. 2022), *cert. granted, judgment vacated*, No. 23-154, 2023 WL 8531840; *Schelske v. Austin*, 694 F. Supp. 3d 254 (N.D. Tex. 2022) (Army).

And only the Coast Guard's rescission proclaimed it was ceasing involuntary separations "that resulted from *violations of [] lawful orders*"—i.e., that it was merely ending the consequences of those violations "[i]n alignment with the [DoD]," while still preserving the notion that even good-faith religious objectors were still "violat[ors]" of such orders. *Compare* ROA.1895 at ¶2 (emphasis added) *with* ROA.1893.

That suffices to preserve a "live" controversy for declaratory relief. *Connell*, 555 F.2d at 487.

The District Court erroneously relied to the contrary on this Court's recognition that "[w]here reputational injury is the lingering effect of an *otherwise moot* aspect of a lawsuit, no meaningful relief is possible." *Danos v. Jones*, 652 F.3d 577, 584 (5th Cir. 2011) (emphasis added) (internal quotes omitted) (holding that a judge's *secretary* could not assert reputational harm based on judicial council's finding that *the judge* committed misconduct). ROA.1952. Notably, *Danos* was quoting *Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003), which *further* clarified that "where reputational injury derives directly from an unexpired and *unretracted* government action, that injury satisfies the requirements of Article III." *Id.* at 1213 (emphasis added). That Court thus found jurisdiction where the plaintiff's reputational injury derived from an alleged Congressional bill of attainder "effectively branding him a child abuser and an unfit parent." *Id.* While the Court acknowledged its conclusion "might be different" if Congress had repealed the challenged act, it distinguished another of its decisions finding reputational-based jurisdiction where "*stigmatizing reports were a*

*continuing part of the historical record.*" *Id.* (emphasis added) (citing *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. Of Jud. Conf. of U.S.*, 264 F.3d 52, 56 (D.C. Cir. 2001)); *see McBryde*, 264 F.3d at 57 (unretracted "public reprimand . . . constituted an 'official characterization' of the appellee as having engaged in" bad actions prejudicial to the judiciary; thus, "declar[ing] unlawful the defendants' issuance of stigmatizing reports" would "relieve . . . much of the resulting injury").

Again, here the Coast Guard's rescission proclaimed it was merely ending the consequences of alleged "violations of [] lawful general orders," while effectively maintaining the characterization that Plaintiffs and the putative class are indeed still "violat[ors]" of such orders. The Navarro memos are an additional stigmatizing historical record, especially given the lack of affirmative protection against ad hoc discrimination based on COVID-19 vaccine status going forward. Accordingly, a declaratory judgment would provide meaningful relief, as confirmed by Admiral Lee's unrebutted testimony.

### 2.    The District Court conflated the doctrines of collateral legal versus practical consequences.

The District Court also pointed to the Supreme Court's decision in *Spencer v. Kemna*, 523 U.S. 1, 16 n.8 (1998) for the proposition that "vindicating reputation is not constitutionally sufficient to avoid mootness." ROA.1952 (internal quotes omitted). But that is an inapposite principle from the doctrine of collateral *legal* consequences, which typically arises in the context of a pending habeas corpus petition after the expiration of a challenged sentence. *Spencer*, 523 U.S. 1. In *that* context the Supreme Court has stated that reputational damage alone, absent automatic *legal* consequences from a potential wrongful conviction or sentence in the future, does not sustain a live controversy. *Id.* at 13, 16 n.8; *accord Johnson v. City of Opelousas*, 658 F.2d 1065, 1068 (5th Cir. 1981) (a "criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction").

This Court's decision in *Connell* expressly disclaimed reliance on the doctrine of "collateral legal consequences (as contrasted with collateral pragmatic consequences)," because any automatic future *legal* consequences accruing from the Army's finding of discrimination were

too remote there. 555 F.2d at 486 n.3. Yet it still found live collateral "pragmatic" consequences based on Plaintiffs' reputational harms. *Id.* at 486-88.

An unpublished opinion of this Court once questioned whether *Connell* remains good law in light of *Spencer. See Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urb. Dev.*, 618 F. App'x 781, 787-88 (5th Cir. 2015) (unpublished) (nonetheless assuming it does). But again, *Spencer* hinged on collateral *legal* consequences.

Indeed, Wright & Miller recognizes these two fundamentally distinct types of collateral consequences, observing that the collateral-consequences doctrine "was initially developed to ensure review of expired criminal sentences, but it has since been applied in civil cases as well"; specifically, "[c]ollateral consequences may be found in the prospect that a judgment will affect future litigation or administrative action," *and* "*practical* consequences also may suffice, such as *adverse impact on a party's reputation*." Injunctions, Declaratory Judgments, Other Specific Relief, 13C Fed. Prac. & Proc. Juris. § 3533.1.3 (3d ed.) (emphasis added) (citing *F.C.C. v. Fox Television Stations Inc.*, 586 U.S. 239 (2012) ("reputational injury" from FCC's then-halted "fleeting expletives" policy,

especially given the "strongly disapproving terms" used in FCC's reprimand orders coupled with FCC's power to take prior violations of that policy into account in the future, prevented mootness)).

Accordingly, Plaintiffs' reputational harms preserve a live controversy under the doctrine of collateral *practical* consequences. The District Court's reliance on the doctrine of collateral legal consequences was erroneous.[12]

## C.  Plaintiffs' claims are justiciable and not subject to *Mindes* exhaustion.

The District Court also held that Marcenelle's missed (and at least substantially delayed) promotion is not justiciable under *Orloff*, 345 U.S. at 92, and that protection from future evaluation downgrades based on COVID-19 vaccination status must first be administratively exhausted. ROA.1952-53 at 6-7 and n.3. That is not correct.

---

[12] This error also infected the District Court's reliance on the Ninth Circuit's decision in *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1167 (9th Cir. 2011), to conclude that a missed training session under past policy does not authorize prospective relief. ROA.1952. *Log Cabin Republicans* expressly relied on the doctrine of collateral legal consequences and is thus inapposite. 658 F.3d at 1167 (stating that alleged missed "benefits" as a result of forced separation "are not *legal* penalties from past conduct") (emphasis added).

As to justiciability, the District Court did not acknowledge the Supreme Court's longstanding recognition that "matters of mind and spirit, rooted in the First Amendment, are not in the keeping of the military," and "[w]hen the military steps over those bounds, it leaves the area of its expertise and forsakes its domain"; at that point, "[t]he matters becomes one for civilian courts to resolve, consistent with the statutes and with the Constitution." *Parisi v. Davidson*, 405 U.S. 34, 54-55 (1972).

The District Court also pointed to Justice Kavanaugh's solo concurrence in *Austin v. U.S. Navy SEALs 1-26*, which opined that Article II provides the military with near-total authority to administer a vaccine mandate how it sees fit. 142 S. Ct. at 2022 (Kavanaugh, J., concurring). But Justice Kavanaugh's solo opinion entirely ignored Article I of the Constitution, which explicitly provides that Congress has authority "[t]o make Rules for the Government and Regulation of the land and naval Forces" (i.e., the military). U.S. Const. Art. I, Sec. 8, Cl. 14.

RFRA is plainly one of those rules. Indeed, this Court has twice recently acknowledged that RFRA requires the military to respect service members' religious rights even as to COVID-19 vaccination, *see Navy*

*SEALs I*, 27 F.4th at 345-46 ("Congress rendered justiciable Plaintiffs' claims under RFRA, which applies to every 'branch, department, agency, instrumentality, and official . . . of the United States." (Citing 42 U.S.C. § 2000bb-2(1)), and even with respect to deployment. *Navy SEALs II*, 72 F.4th at 673.

Notably, the District Court did not contend Plaintiffs' case is otherwise *generally* non-justiciable and subject to exhaustion under *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), a "judge-created abstention doctrine" in matters "implicating internal military affairs," *Navy SEALs I*, 27 F.4th at 346. This Court has recognized that RFRA almost certainly supersedes *Mindes* abstention. *Id.*; *accord, e.g., Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022).

Even if *Mindes* applied, Plaintiffs would prevail for reasons analogous to those outlined by this Court in *Navy SEALs I*: Plaintiffs raise First Amendment and RFRA claims; the Coast Guard refuses to affirmatively protect them from ad hoc discrimination or otherwise eradicate their resulting collateral disadvantages; Plaintiffs allege specific and non-frivolous violations of their RFRA and First Amendment rights under *Navy SEALs I & II*; Plaintiffs are suffering resulting

irreparable harm; there is no evidence the relief they request—consistent with that provided by the DoD in the other branches—would "seriously impede military function"; and protecting RFRA rights in this context does not trample on military expertise. *See* 27 F.4th at 346-49.

Accordingly, Plaintiffs' claims are justiciable and not subject to exhaustion. Indeed, even the case the District Court cited for requiring that Stone exhaust his quest for protection from evaluation downgrades (and attendant harms from his already-incurred downgrade) acknowledges that exhaustion is not required for "an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes." *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). ROA.1953 at n.3.

That is this case. Therefore, the Coast Guard has not shown that Plaintiffs' case is moot, given the Coast Guard-specific collateral harms they are continuing to incur.

## III.    Mootness exceptions also apply.

Even if Plaintiffs' claims were moot, the District Court had jurisdiction under two mootness exceptions: voluntary cessation and capable-of-repetition-but-evading-review, as explained in turn.

## A.    Voluntary cessation.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). The Supreme Court has explained that "[t]he test for mootness in cases such as this is a stringent one"; otherwise, "courts would be compelled to leave the defendant free to return to his old ways." *Id.* at 289 n.10 (cleaned up). Thus, where a defendant voluntarily rescinds its challenged policy, the case is only moot if the defendant demonstrates that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (emphasis added) (internal quotes omitted).

The voluntarily cessation doctrine applies here in two ways: (1) by its own terms, the 2023 NDAA required only the "Secretary of Defense," *not* DHS or the Coast Guard, to rescind its mandate; and (2) the

rescission of other restrictions, beyond forced separation, were indisputably voluntary. *See Navy SEALs II*, 72 F.4th at 674 n.7.[13]

This Court has said in some but not all voluntary-cessation cases that there is a presumption of good faith where the defendant is a government entity. *Navy SEALs II*, 72 F.4th at 673-74. (Notably, the Supreme Court has never held that. *See Tucker*, 40 F.4th at 295 (Ho, J., concurring).)[14] But the presumption *does not apply* in the face of "evidence to the contrary." *Navy SEALs II*, 72 F.4th at 674. And even without such evidence, a government defendant still bears a "heavy" and "formidable burden" of demonstrating mootness." *Id.* at 292 (internal quotes omitted); *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018).

The Coast Guard fails under both tests. Contrary to the District Court's ruling, there is abundant evidence of litigation posturing by DHS

---

[13] The District Court stated that because "armed forces" is elsewhere defined to include the Coast Guard, it is "unclear" whether the 2023 NDAA applied to the Coast Guard. ROA.1954 (citing 10 U.S.C. § 101(a)(4)). But it did not dispute that the 2023 NDAA directed only the Secretary of Defense to rescind its mandate, or that the Coast Guard is not under the authority of the Secretary of Defense (during peacetime), as the Coast Guard itself has admitted in this case.

[14] Indeed, many Supreme Court and Fifth Circuit cases do *not* apply such a presumption. *City of Mesquite*, 455 U.S. at 289; *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 327-29 (5th Cir. 2020); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022); *Tucker*, 40 F.4th at 292-93.

and the Coast Guard here. And even assuming its good faith, the Coast Guard has failed to make absolutely clear that the *gravamen* of Plaintiffs' claims—especially their *class-wide* complaint against the Coast Guard's *failure to engage in individualized review* of requests for religious accommodation—is not reasonably likely to recur.

### 1. The Coast Guard, unlike the other branches, has engaged in transparent litigation posturing.

This Court recently explained that "three factors can overcome the presumption" of the government's good faith: "(1) the absence of a controlling statement of future intention not to repeat the challenged policy; (2) the suspicious timing of the change; and (3) the government entity's continued defense of the challenged policy after the supposedly mooting event." *Texas*, 20 F.4th at 962.

It's true that in *Navy SEALs II* this Court found no signs of litigation posturing in rejecting a voluntary cessation argument with respect to the Navy's COVID-19 vaccine mandate (in part because the Navy ensured COVID-19 vaccination status "shall not be a consideration" in deployment and operational assignments moving forward). 72 F.4th at 674. But here, "DHS has," once again, "repeatedly exhibited

gamesmanship in its decisionmaking," *Texas*, 20 F.4th at 962, not good faith.

First, the Coast Guard uniquely required its chaplains to conduct patently illegal inquisitions into the supposed "legitimacy" of service members' religious objections to COVID-19 vaccination.[15] Stone's commander demonstrated similar hostility in telling his crew that "your religious beliefs . . . don't matter to me." *See supra.* Then followed the sham process granting *zero* out of more 1,200 requests for religious accommodation, except for a handful of service members already imminently departing. ROA.463, 420, 585, 1948. *See, e.g.*, ROA.719-20 at ¶¶4-7, and ROA.733 (Declaration of former Coast Guard member attesting that her religious accommodation appeal was indeed granted explicitly "because [I had *already*] separated from active duty" and was valid only "until the conclusion of [my] Temporary Separation agreement"; it said her request would be "reconsider[ed]" *if she attempted*

---

[15] Ryan Morgan, "Coast Guard to scrutinize members requesting religious exemptions for mandatory COVID vaccine, leaked document reveals," American Military News, Sept. 24, 2021,https://americanmilitarynews.com/2021/09/coast-guard-to-scrutinize-members-requesting-religious-exemptions-for-mandatory-covid-vaccine-leaked-document-reveals/.

*to return to service*). Thus, the Coast Guard's assertion to a separate judicial tribunal in August 2022 that it had "approved" 12 religious accommodation requests, ROA.112, was manifestly disingenuous.[16]

Further, after the District Court denied Plaintiffs' motion for a TRO "**without prejudice**" (bold in original), the Coast Guard agreed only to temporarily delay the separation process for Plaintiffs and to provide temporary and partial relief for a relatively small group of other putative class members, and refused any sort of relief for hundreds of other putative class members *whose specific identities were unknown* to Plaintiffs. The Coast Guard could have halted disciplinary proceedings for these hundreds of guardsmen unknown to Plaintiffs, but known to the Coast Guard, who were likewise slated for imminent separation or inactive status—during the 2022 holiday season, no less. ROA.794-95, 1135-36, 1144-45, 1230-32. But it flatly refused. *Id.*

Then, in its rescission order, the Coast Guard uniquely made clear it was merely ending mandatory separation for "violat[ors] of the lawful

---

[16] The Coast Guard also had a separate category of "administrative" exemptions for imminently-departing members. ROA.8 at ¶¶48-49, 51 at ¶238. So, its grant of several "religious" accommodations for religious objectors who already qualified for that separate exemption was also transparently disingenuous.

general orders"—a knowingly career-damaging characterization. And it still has not guaranteed affirmative protection for Plaintiffs and the putative class, unlike in *Navy SEALs II*.

The Coast Guard also falsely claimed it was "required" by the NDAA to rescind its mandate, ROA.1461 (second-to-last line), despite initially promulgating its rescission *before* the DoD's rescission. ROA.1176-77. And it has misleadingly asserted that its post-mandate guidance "*preclude[s]* COVID-19 vaccination status from inhibiting service in the Coast Guard," pointing only to memoranda that glaringly do *not* include language of affirmative protection with respect to "Assignments," while including such language for "Advancements" (for enlistees). *See* ROA.1871.

Further, in August 2023 the Coast Guard issued ALCOAST 291/23 promising to quickly restore promotions and advancements within "approximately 30 days" for those who had *separated* because of the COVID-19 vaccine mandate. ROA.1966. The guidance suspiciously does not apply to *non*-separated members like Plaintiffs and the putative class members (who sought relief in this lawsuit). ROA.93. Thus, Marcenelle, for example, has been forced to endure a months-long, multi-round

process of re-applying for his otherwise automatic promotion to Lieutenant without ever being given the assurances provided to separated members in ALCOAST 291/23.

Additionally, the Coast Guard's public website continued to proclaim *until at least September 22, 2023*, that COVID-19 vaccination was still mandatory.[17] The Coast Guard has also derisively called Plaintiffs' permanently-recorded evaluation downgrades, promotion delays, and scarlet-letter Navarro memos mere "paperwork injuries" (ROA.1887)—in a context where Coast Guard leadership indisputably continues to view Plaintiffs and the putative class as disobedient violators of "lawful orders." *See supra.*

These are quintessential signs of bad faith, and they easily satisfy the three factors for vitiating the presumption of good faith:

First, there is a complete absence of a controlling statement that the Coast Guard will refrain from similar actions in the future. Indeed, it admits it might implement the mandate again. ROA.1461. And,

---

[17] https://web.archive.org/web/20230922041844/www.uscg.mil/Coronavirus/Informatio n/Article/2753898/mandatory-vaccination-for-military-members-faqs/ (archived as of Sep. 22, 2023).

following this Court's decision in *Navy SEALs II*, the Biden Administration publicly complained that the 2024 NDAA could constrain it from "*again requir[ing] [COVID-19] vaccination*" for the military.[18]

Critically, the Coast Guard also gives no indication whatsoever that it will halt its practice of refusing to give *individualized* consideration to requests for religious accommodation (whatever the issue), and of relying on only *generalized interests* in denying them—in blatant violation of RFRA's "to the person" requirement. *See, e.g., Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006). That *systematic procedural violation* is the "gravamen" of Plaintiffs' claim for *class-wide* relief, ROA.54 at ¶263; ROA.118, which is the focus of the voluntary cessation analysis, *Texas*, 20 F.4th at 960; *City of Jacksonville*, 508 U.S. at 662.

Second, the timing of the Coast Guard's actions is suspicious. It began providing partial relief only after the District Court's TRO denial

---

[18] Statement of Administration Policy on H.R. 2670, July 10, 2023, at 5 (emphasis added) (emphasis added), https://www.whitehouse.gov/wp-content/uploads/2023/07/H.R.-2670-NDAA.pdf. The Biden Administration also proclaimed that those service members who did not submit to COVID-19 vaccination—including religious objectors—did "not follow[] lawful orders." *Id.*

"**without prejudice**" (bold in original). ROA.767. *See Texas*, 20 F.4th at 964 ("DHS started reviewing its policy only after losing in district court."). But it did only as much as it believed it needed to in order to avoid an adverse decision. *See supra.* And after voluntarily rescinding its mandate, it issued seriatim guidance merely giving the appearance of tracking DoD's post-mandate policies, without actually ensuring the same protections for unvaccinated service members. Notably, it granted Marcenelle's request for a Special Selection Board only two days before filing its Reply in Support of its Motion to Dismiss, despite previously telling him his request might be futile; yet it claimed "extenuating circumstances" allowed it to extend its (already lengthy) 120-day timeline for convening the Board. ROA.1835-36.

Third, the Coast Guard continues to defend its "shockingly" illegal actions as lawful and in the supposed *general* interests of health and readiness, ROA.1462, despite RFRA's "to the person" requirement. At the same time, it egregiously maintains that it evaluated religious accommodation requests "based on individual circumstances." ROA.1462. *See Texas*, 20 F.4th at 998 ("DHS had two procedural options.

. . . [it] tried to choose both at the same time"). "In no way does [the Coast Guard's assertion of mootness] alter that [absurd] stance." *Id.* at 964.

If this is not gamesmanship, it's not clear what would be. The Coast Guard thus fails its "stringent" and "heavy burden" to show mootness for this reason alone.

> **2.    The Coast Guard has failed to show with absolute certainty that the challenged harm (including the procedural harm) is not likely to recur.**

Even under a "lighter burden," *Navy SEALs II*, 72 F.4th at 673, the Coast Guard still fails to show mootness. Like the government defendant in *Tucker*, the Coast Guard "has not even bothered to give [Plaintiffs] any assurance that it will permanently cease engaging in the very conduct that [they] challenge[]." 40 F.4th at 293; *see also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 874-75 (5th Cir. 2000) (holding Title IX case not moot where defendant university officials "made no representation to this court that they are dedicated to ensuring equal opportunities and fair accommodation for both their female and male athletes in the long run," but "simply state[d] that they have, as required, submitted a Compliance Plan to the district Court. [They] have given no assurance

that they will not disband these programs, as they have with varsity fast-pitch softball in the past").

This is again evidenced by the Coast Guard's singular refusal to provide affirmative protections for Plaintiffs and the putative class, in line with the DoD; its insistence the mandate was "lawful" (notwithstanding RFRA's superseding protections); and its ongoing reliance on generalized interests to support its actions.

Similarly, as noted, the Coast Guard has given zero assurances that it will begin assessing religious accommodation requests (whatever the issue) on an *individualized* basis, without dispositive reliance on *generalized* interests (e.g., "military readiness"), in an about-face compliance with RFRA. Again, that *procedural* failure is the "gravamen" Plaintiffs' claim for *class-wide* relief, as it was the Coast Guard's *procedural* violations that most readily triggered Rule 23(a)'s "common[ality]" and "typical[ity]" requirements. ROA.54, 115, 118. *Accord Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022) ("Plaintiffs do not only complain about the final denials. They also complain about the Air Force's *policies* for deciding whether to grant exemptions.") (original emphasis), *vacated on other grounds*, *Kendall*, 2023 WL 8531840. And

indeed, the Supreme Court has instructed that "[t]he gravamen of [plaintiffs'] complaint" is the key in assessing voluntary cessation. *City of Jacksonville*, 508 U.S. at 662.[19]

Accordingly, it is "far from clear that the government has ceased the challenged conduct *at all*, let alone with the permanence required under the 'stringent' standards that govern the mootness determination when a defendant claims voluntary compliance." *Tucker*, 40 F.4th at 289 (original emphasis). The Coast Guard has thus failed to show that its voluntary cessation moots this case.

## B. Capable of repetition but evading review.

Additionally, the dispute is capable of repetition but evading review.[20] This exception applies where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action." *Cath.*

---

[19] This Court expressly did not hold that the class-wide claims were entirely moot in *Navy SEALs II*. 72 F.4th at 675. And while *Doster* involved a similar class-wide procedural violation, the plaintiffs-respondents there did not specifically raise the issue to the Supreme Court. *See Kendall*, No. 23-154, Brief in Opposition at 17-18. Thus the Supreme Court did not decide that question in its *Munsingwear* vacatur. *Kendall*, 2023 WL 8531840.

[20] This Court expressly did not decide this issue in *Navy SEALs II*. 72 F.4th at 675.

*Leadership Coal of Texas v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014). Here, the duration was too short because the Coast Guard adopted its mandate in August 2021, but it did not issue final denials of Plaintiffs' religious accommodation requests until May 2022. ROA.18 at ¶5. Plaintiffs then filed this class action suit in September 2022 and were denied a TRO "without prejudice." As a result, the Coast Guard agreed to delay their involuntary separations, effectively preventing them from obtaining a judgment on the merits. Then the Coast Guard voluntarily rescinded its mandate in January 2023, and soon thereafter cried "mootness." Accordingly, these tactics rendered the dispute too short to be fully litigated. And it is reasonably likely to recur in the future, for the reasons discussed above.

Accordingly, the Coast Guard has failed to meet its "heavy" burden of demonstrating mootness, contrary to the District Court's ruling.

## IV. The District Court wrongly denied Plaintiffs' Rule 60(b) motion

Plaintiffs also request reversal of the District Court's order denying their Rule 60(b) Motion for Relief from Final Judgment. ROA.1958. Plaintiffs requested this relief due to new evidence including the Coast Guard's issuance of ALCOAST 291/23, noted above. ROA.1966. The

Coast Guard failed to give notice of this important policy to the District Court or Plaintiffs' counsel. ROA.1966.

The District Court denied the Rule 60(b) motion with a single page, two-sentence order providing no analysis at all. This failure to "properly analyze the law or apply it to the facts" amounts to an abuse of discretion. *Hewlett-Packard Co. v. Quanta Storage, Inc.*, 961 F.3d 731, 743 (5th Cir. 2020).[21] This Court should reverse the order denying Plaintiffs' Rule 60(b) Motion.

## A.    The new and flagrantly discriminatory Coast Guard policy.

ALCOAST 291/23 "assist[s] Coast Guard members (active duty and reserve) who separated–voluntarily or involuntarily–due to the previously mandated COVID-19 vaccination."[22] ROA.1966. ALCOAST 291/23 establishes formal re-accession teams to help these separated Coast Guard members rejoin the Coast Guard. Surely aware of former members' reticence to rejoin just months after the Coast Guard denied them leave, training, health insurance, salary, education, camaraderie,

---

[21] This Court reviews Rule 60(b) decisions for abuse of discretion, *Blois v. Friday*, 612 F.2d 938, 939 (5th Cir. 1980), which includes legal error.
[22] https://content.govdelivery.com/accounts/USDHSCG/bulletins/36a37c2.

and even housing, the Coast Guard is offering to restore "promotions or advancements" to those whose "promotions or advancements [were] withheld solely due to their COVID-19 vaccination status." ROA.1966. As noted, the Coast Guard stated it could finish the process in about 30 days, while providing no such assistance or assurance for Plaintiffs and putative class members. *Id.*

### B. The District Court should have granted Plaintiffs' Rule 60(b) motion.

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (5) . . . applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." "Rule 60(b) is to be construed liberally to do substantial justice," especially "in hard cases where the circumstances generally measure up to one or more of the itemized grounds." *Johnson Waste Materials v. Marshall*, 611 F.2d 593, 600 (5th Cir. 1980) (internal quotes omitted).

The District Court erred by not granting relief under Fed. R. Civ. P. 60(b)(5). Under this rule, a court should grant relief from judgment when plaintiffs show that "(1) the judgment has prospective application

and (2) it is no longer equitable that it should so operate." *Kirksey v. City of Jackson*, 714 F.2d 42, 43 (5th Cir. 1983).

Here, there is no dispute the judgment has prospective application regarding mootness; the original judgment was not equitable in the first place; and it "is no longer equitable" in light of the ALCOAST 291/23. This policy confirms that Plaintiffs have not been placed on "equal footing" with their vaccinated (and their separated-but-returning unvaccinated) counterparts, contrary to the District Court's ruling. ROA.1949, 1950, 1954, 1956. *See Navy SEALs II*, 72 F.4th at 673. Indeed, while non-class members can expect promotion restoration within just 30 days, Marcenelle has waited for *nearly ten months* just to hear a decision on whether he will be promoted through a Special Selection Board. ROA.1913. This new policy illustrates that the Coast Guard can, and will, provide promotion relief to those whom it favors, and persists in refusing similar to relief to those whom it disfavors, like Plaintiffs. The Coast Guard's actions here are inequitable. The judgment below allows that inequity to persist.

Alternatively, Plaintiffs' requested relief is warranted under Fed. R. Civ. P. 60(b)(6). Relief should be granted under this rule if

"extraordinary circumstances are present." *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990). Such "extraordinary circumstances" have been found "[w]hen a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).

Extraordinary circumstances are present here because ALCOAST 291/23 confirms that Plaintiffs have not been placed on "equal footing" with fellow service members, in direct violation of RFRA and the First Amendment, as discussed above. The new policy reveals that past adverse actions persists with current effect and still require reversal, contrary to the District Court's ruling. It also shows that the Coast Guard is ready and willing to reverse those adverse actions for nearly anyone but Plaintiffs and putative class members. The initial judgment is therefore "manifestly unjust." *Harris*, 636 F.2d at 577.

Rule 60(b)(6) grants courts the authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614-615 (1949). The

District Court erred by not granting Plaintiffs' motion under Rule 60(b)(6).

## C. This Court should reverse the District Court's barebones denial for abuse of discretion.

A District Court abuses its discretion when it acts "in an unreasonable or arbitrary manner without reference to any guiding rules and principles." *United States v. M/Y Galactica Star*, 13 F.4th 448, 453 (5th Cir. 2021) (cleaned up). A District Court also abuses its discretion when it fails to "properly analyze the law or apply it to the facts." *Hewlett-Packard Co.*, 961 F.3d at 743. *See also In re Cendant Corp. PRIDES Litig.*, 234 F.3d 166, 173–74 (3d Cir. 2000) (vacating and remanding a denial of a Rule 60(b) motion because the failure to analyze it constituted an abuse of discretion, noting that "it is incumbent upon a district court to make its reasoning and application of the jurisprudence clear, so that [the] reviewing court [has] a sufficient basis to review for abuse of discretion").

Here, the District Court abused its discretion by failing to provide any analysis of Plaintiffs' Rule 60(b) motion whatsoever. The order merely includes one sentence acknowledging that the motion was filed, and a second sentence stating: "Having reviewed the arguments set forth

in the motion, the record in the case, and for the reasons set forth in the Court's August 17, 2023 Order dismissing this case, the motion is DENIED." ROA.1971. That's it. The District Court thus failed to properly consider the Rule 60(b) motion.

"Doubt [regarding Rule 60(b) motions] should be resolved in favor of a judicial decision on the merits of a case." *Blois*, 612 F.2d at 940. Accordingly, this Court should reverse the District Court's order denying Plaintiffs' motion under Rule 60(b).

## CONCLUSION

For the foregoing reasons, this Court should REVERSE the District Court's order dismissing Plaintiffs' Complaint or alternatively REVERSE the denial of Plaintiffs' Rule 60(b) motion.

Plaintiffs also request that this Court ORDER the District Court to promptly rule on Plaintiffs' motions for individual and class-wide relief. This Court has directed timely rulings when constitutional rights are at issue and should do so here as well. *See, e.g.*, *Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (directing lower court to rule in 60 days).

Dated: December 18, 2023

Respectfully submitted,

/s/ Michael G. McHale

Stephen Crampton
THOMAS MORE SOCIETY
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael G. McHale
THOMAS MORE SOCIETY
10506 Burt Circle, Ste. 110
Omaha, NE 68114
(402)501-8586
mmchale@thomasmoresociety.org

Nathan Loyd
THOMAS MORE SOCIETY
5101 Old Highway 5, Box 442
Lebanon, GA 30146
(559)744-3664
nloyd@thomasmoresociety.org

Adam S. Hochschild
Hochschild Law Firm, LLC
THOMAS MORE SOCIETY
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

I certify that on December 18, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. Service will be accomplished by the CM/ECF system and by email to counsel for Defendants-Appellees.


/s/    Michael G. McHale
*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 12,914 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

/s/   Michael G. McHale
*Counsel for Plaintiffs-Appellants*