## CASE NO. 23-11038

IN THE

# United States Court of Appeals
## FOR THE FIFTH CIRCUIT

---

Eric Jackson; Alaric Stone; Michael Marcenelle,

*Plaintiffs- Appellants,*

v.

Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security;
Lloyd J. Austin, III, Secretary, U.S. Department of Defense;
Linda Fagan, Commandant of the Coast Guard; Brian Penoyer,
Assistant Commandant for Human Resources of the Coast Guard,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, FT. WORTH

---

### APPELLANTS' REPLY BRIEF

---

Michael G. McHale
THOMAS MORE SOCIETY
10506 Burt Circle, Suite 110
Omaha, NE 68114
402-501-8586
mmchale@thomasmoresociety.org

Adam Hochschild
HOCHSCHILD LAW FIRM, L.L.C.
P.O. Box 401
Plainfield, VT 05667
314-503-0326
adam@hochschildlaw.com

Stephen M. Crampton
THOMAS MORE SOCIETY
P.O. Box 4506
Tupelo, MS 38803
662-255-9439
scrampton@thomasmoresociety.org

Nathan Loyd
THOMAS MORE SOCIETY
309 W. Washington Street, Suite 1250
Chicago, IL 60606
312-896-0151
nloyd@thomasmoresociety.org

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

Eric Jackson; Alaric Stone; Michael Marcenelle,

Plaintiffs - Appellants

v.

Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security; Lloyd J. Austin, III, Secretary, U.S. Department of Defense; Linda Fagan, Commandant of the Coast Guard; Brian Penoyer, Assistant Commandant for Human Resources of the Coast Guard,

Defendants - Appellees

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

There are no corporations that are either parents of any of the Plaintiffs-Appellants or that own 10% or more stock in any of the Plaintiffs-Appellants.

## A. Plaintiffs-Appellants

Eric Jackson
Alaric Stone
Michael Marcenelle

## B. Current and Former Attorneys for Plaintiffs-Appellants

<u>Current Attorneys</u>

Stephen Crampton
THOMAS MORE SOCIETY
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael G. McHale
THOMAS MORE SOCIETY
10506 Burt Circle, Ste. 110
Omaha, NE 68114
(402)501-8586
mmchale@thomasmoresociety.org

Nathan Loyd
THOMAS MORE SOCIETY
5101 Old Highway 5, Box 442
Lebanon, GA 30146
(559)744-3664
nloyd@thomasmoresociety.org

Adam S. Hochschild
Hochschild Law Firm, LLC
THOMAS MORE SOCIETY
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Former Attorneys

    Mary Catherine Martin
    THOMAS MORE SOCIETY
    112 S. Hanley Rd., Second Floor
    Clayton, MO 63105
    (314)825-5725
    mmartin@thomasmoresociety.org

    Charles W. Fillmore
    H. Dustin Fillmore III
    THE FILLMORE LAW FIRM, L.L.P.
    Fort Worth, TX 76102
    (817)332-2351
    chad@fillmorefirm.com
    dusty@fillmorefirm.com

    Paul M. Jonna
    LiMandri & Jonna LLP
    THOMAS MORE SOCIETY
    P.O. Box 9120
    Rancho Santa Fe, CA 92067
    (858)759-994
    pjonna@limandri.com

## C. Defendants-Appellees

    Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security
    Lloyd J. Austin, III, Secretary, U.S. Department of Defense
    Linda Fagan, Commandant of the Coast Guard
    Brian Penoyer, Assistant Commandant for Human Resources of the Coast Guard

## D. Current and Former Attorneys for Defendants-Appellees

<u>Current Attorneys</u>
　　　Cody Knapp
　　　Sarah Clark
　　　United States Department of Justice
　　　Civil Division
　　　Federal Programs Branch
　　　1100 L Street NW
　　　Washington, D.C. 20530
　　　(202)532-5663
　　　cody.t.knapp@usdoj.gov
　　　sarah.clark@usdoj.gov

<u>Former Attorney</u>
　　　Johnny Walker
　　　United States Department of Justice
　　　Civil Division
　　　Federal Programs Branch
　　　1100 L Street NW
　　　Washington, D.C. 20530
　　　(202)532-5663
　　　johnny.h.walker@usdoj.gov

## E. Other Interested Persons
None

Dated: February 7, 2024

　　　　　　　　　　/s/　　Michael G. McHale
　　　　　　　　　　Michael G. McHale
　　　　　　　　　　THOMAS MORE SOCIETY
　　　　　　　　　　10506 Burt Cir., Ste. 110
　　　　　　　　　　Omaha, NE 68114
　　　　　　　　　　(402) 501-8586
　　　　　　　　　　mmchale@thomasmoresociety.org
　　　　　　　　　　*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...........................................i

TABLE OF CONTENTS ........................................................ v

TABLE OF AUTHORITIES ...................................................vi

   I.    The Coast Guard Still Fails to Demonstrate Mootness.............. 1

     A.   Ongoing, Unique Collateral Consequences. ................................ 3

       1.   Permitting ad hoc discrimination. .......................................... 3

       2.   Individual ongoing consequences............................................ 7

     B.   Plaintiffs remain entitled to declaratory judgment. ................. 11

     C.   The Coast Guard's actions are not insulated from judicial review. ................................................................................... 14

   II.   Mootness exceptions also apply. ................................................ 17

     A.   Voluntary Cessation. ................................................................ 17

       1.   The Coast Guard voluntarily rescinded the mandate and its enforcement policies. ................................................. 18

       2.   The Coast Guard confirms it is not entitled to a presumption of good faith. ................................................................... 19

     B.   Capable of Repetition but Evading Review. ............................. 26

       1.   The dispute was too short to be fully litigated. ...................... 26

       2.   The Coast Guard is likely to repeat Plaintiffs' harms. .......... 30

   III.   The Coast Guard did not establish that the District Court properly reviewed Plaintiffs' Rule 60(b) motion. ...................... 32

CONCLUSION ......................................................................... 35

CERTIFICATE OF SERVICE.................................................... 37

CERTIFICATE OF COMPLIANCE ........................................ 38

# TABLE OF AUTHORITIES

## Cases

*Abdelfattah v. U.S. Dept. of Homeland Sec.,*
    787 F.3d 524 (D.C. Cir. 2015)................................................................17

*Austin v. U.S. Navy SEALs 1-26,*
    132 S.Ct. 1301 (2022) ........................................................................16

*Bazzrea v. Mayorkas,*
    No. 3:22-cv-265, 2023 WL 3958912 (S.D. Tex. June 12, 2023).............2

*Cardinal Chem. Co. v. Morton Int'l, Inc.,*
    508 U.S. 83 (1993) ...............................................................................6

*Cath. Leadership Coal. of Texas v. Reisman,*
    764 F.3d 409 (5th Cir. 2022) ...............................................................27

*Chafin v. Chafin,*
    568 U.S. 165 (2013) ..............................................................................1

*Chastain v. Kelley,*
    510 F.2d 1232 (D.C. Cir. 1975) ...........................................................17

*Connell v. Shoemaker,*
    555 F.2d 483 (5th Cir. Cir. 1977) ...................................................12, 14

*Doe v. U.S. Air Force,*
    812 F.2d 738 (D.C. Cir. 1987)..............................................................17

*Emory v. Sec'y of Navy,*
    819 F.2d 291 (D.C. Cir. 1987)..............................................................16

*Empower Texans, Inc. v. Geren,*
   977 F.3d 367 (5th Cir. 2020) ......................................... 28, 30

*F.C.C. v. Fox Television Stations Inc.,*
   567 U.S. 239 (2012) .............................................................. 14

*Firefighters Loc. Union No. 1784 v. Stotts,*
   467 U.S. 561 (1984) ................................................................. 3

*Fulton v. City of Philadelphia,*
   141 S. Ct. 1868 (2001) .......................................................... 26

*Gilligan v. Morgan,*
   413 U.S. 1 (1973) ................................................................... 15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
   546 U.S. 418 (2006) ............................................................. 26

*Good Luck Nursing Home, Inc. v. Harris,*
   636 F.2d 572 (D.C. Cir. 1980).............................................. 34

*Guy v. United States,*
   608 F.2d 867 (Ct. Cl. 1979) ................................................. 16

*Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n,*
   628 F.3d 568 (D.C. Cir. 2010).............................................. 32

*In re City of Detroit, Mich.,*
   841 F.3d 684 (6th Cir. 2016) ............................................... 30

*ITT Rayonier Inc. v. United States,*
   651 F.2d 343 (5th Cir. Unit B July 1981)............................ 30

*Libertarian Party v. Dardenne,*
   595 F.3d 215 (5th Cir. 2010) ......................................... 31, 32

*Los Angeles Cnty. v. Davis,*
  440 U.S. 625 (1979) ................................................................ 3

*Mesquite v. Aladdin's Castle, Inc.,*
  455 U.S. 283 (1982) .............................................................. 25

*Missouri v. Biden,*
  83 F.4th 350 (5th Cir. 2023) ............................................... 20

*Murthy v. Missouri,*
  144 S. Ct. 7 (2023) ............................................................... 20

*Orloff v. Willoughby,*
  345 U.S. 83 (1953) ................................................................ 15

*Parisi v. Davidson,*
  405 U.S. 34 (1972) ................................................................ 15

*Pilot v. Austin,*
  No. 8:22-cv-1278 (M.D. Fla. June 15, 2023) ......................... 2

*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ............................................... 20

*Spell v. Edwards,*
  962 F.3d 175 (5th Cir. 2020) ............................................... 27

*Texas v. Biden,*
  20 F.4th 928 (5th Cir. 2021), *rev'd on other grounds,*
  142 S. Ct. 2528 (2022) .................................. 20, 21, 22, 23, 24

*Tucker v. Gaddis,*
  40 F.4th 289 (5th Cir. 2022) ................................................. 7

*U.S. Navy SEALs 1-26 v. Biden,*
  4:21-cv-01236 (N.D. Tex.) ...................................................................... 10

*U.S. Navy SEALs 1-26 v. Biden,*
  27 F.4th 336 (5th Cir. 2022) (*Navy SEALs I*) ................................. 15, 26

*U.S. Navy SEALs 1-26 v. Biden,*
  72 F.4th 666 (5th Cir. 2023) (*Navy SEALs II*) ........................... *passim*

*United States v. M/Y Galactica Star,*
  13 F.4th 448 (5th Cir. 2021) ................................................................. 33

## Statutes

14 U.S.C. § 103(b) ..................................................................................... 19

2023 NDAA, PL 117-263, Dec. 23, 2022, 136 Stat 2395 ......................... 18

## Other Authorities

ALCOAST 157/22 ......................................................................................... 4

ALCOAST 291/23 ................................................................................... 33, 35

ALGPSC 058/23 ........................................................................................... 23

Article I, Section 8 of the United States Constitution ............................. 14

Supplemental Letter from Navy, Dkt. #163 (Feb. 17, 2023), *U.S. Navy
  SEALs 1-26 v. Biden,* No. 22-10077 consolidated with No. 22-10534 (5th
  Cir.) ......................................................................................................... 5

## Rules

Fed. R. Civ. Proc. 60(b) .............................................................................. 34

## I.    The Coast Guard Still Fails to Demonstrate Mootness.

The Coast Guard argues this case is moot merely because it has rescinded (voluntarily) the challenged mandate. (Resp.Br. at 9-10.) But it ignores that "a case becomes moot only when it is impossible for a court to grant any effectual relief whatever," *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (emphasis added), including by enjoining a rescinded policy's "*collateral consequences*" (discussed below).[1]

The Coast Guard notes that "numerous courts" have dismissed challenges to "the *military's* COVID-19 vaccination mandate." (Resp.Br. at 11.) But nearly all those cases involved branches under the *Department of Defense* ("DoD"), which has explicitly provided that "DoD Component heads and commanders *will not* . . . consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions." DoD Rescission Guidance, Feb. 24, 2023, cited by *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 673 (5th Cir. 2023) ("*Navy SEALs II*"). The Coast Guard, which is uniquely

---

[1] All emphasis in this brief is added unless otherwise noted.

under the Department of Homeland Security ("DHS"), has provided no such affirmative protections from commander-level discrimination.

While the Coast Guard cites two dismissals involving the Coast Guard's mandate, *see Bazzrea v. Mayorkas*, No. 3:22-cv-265, 2023 WL 3958912 (S.D. Tex. June 12, 2023), and *Pilot v. Austin*, No. 8:22-cv-1278 (M.D. Fla. June 15, 2023) (Dkt. #222), both were issued *before* this Court's clarifying decision in *Navy SEALs II* (July 6, 2023). *Bazzrea* opined that the possibility of future discrimination was too "speculative." 2023 WL 3958912, at *6. But in *Navy SEALs II*, this Court deemed the specter of future discrimination so significant that it only found mootness after identifying "*critical*[]" Navy policies *foreclosing the possibility* of such discrimination in deployments, assignments, and trainings. 72 F.4th at 673. *See infra.*

Thus, the actual question for determining mootness is whether the Coast Guard has eliminated its mandate's collateral consequences in the way this Court found the Navy had in *Navy SEALs II*. The Coast Guard's Response confirms that it has not.

### A.    Ongoing, Unique Collateral Consequences.

### 1.    Permitting ad hoc discrimination.

The Coast Guard does not deny that it must "completely and irrevocably eradicate[] the effects" of its "shocking" denial of effectively *all* requests for religious accommodation, in blatant violation of RFRA. (ROA.1948) *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979); *see also Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984) (no mootness until plaintiffs "have been made whole" under new policy). Nothing in the Coast Guard's Response establishes that it has eradicated the effects of its illegal discrimination here.

The Coast Guard argues it has eliminated the mandate's adverse effects by "*cancel[ing]* the policies that formerly prevented unvaccinated service members from fully participating in the Coast Guard." (Resp.Br. at 13.) It says this "restored those members' *ability* to attend trainings and to compete for command assignments and promotions." (Resp.Br. at 13.) However, it never acknowledges this Court's linchpin analysis in *Navy SEALs II* finding appellate mootness only where, "*[c]ritically*, the Navy ha[d] *also ruled out* using vaccination status to deny deployment eligibility, training opportunities, and assignments," by "*forbid[ding]*

3

considering vaccination status for such decisions." 72 F.4th at 673 (emphasis added). The Coast Guard does not explain how "cancel[ing]" former policies that *required* Plaintiffs' exclusion is equivalent to *forbidding* such exclusion on a case-by-case basis, as the Navy did.

Plaintiff Stone's experience demonstrates the difference. Even after the Coast Guard rescinded a policy barring unvaccinated service members from attending required trainings, his command still forbade him from participating. (ROA.1528) (Op.Br. at 17, 33 n.10.) Later, his supervisor informed him that he received lower evaluation scores in part *because he had not attended the required training course for his current position.* (ROA.1528, 151-52.) The Coast Guard's Response simply avers that "there is no longer any barrier to his attending the training in question" (Resp.Br. at 15), *but that was already true* when Stone was nevertheless prevented from attending. (ALCOAST 157/22) (ROA.295).[2] In other words, Stone's experience shows that rescission of a policy of mandatory discrimination does not provide affirmative protections; it

_____

[2] The Coast Guard also suggests that his changed circumstances may be the reason for his evaluation downgrade (*id.*), ignoring Stone's sworn testimony that he was *specifically told* that his missed training was a material reason for the lower scores. (*Supra.*)

simply makes the discrimination optional. It bears no similarity to the affirmative prohibitions against discrimination put in place by the Navy and other DoD forces.

Without protecting them from discrimination, the Coast Guard has not *actually* "definitively restored Plaintiffs to equal footing with their vaccinated counterparts." *Navy SEALs II*, 72 F.4th at 673; *see also id.* at 677 (Ho, J., dissenting) (noting it was only after oral argument that the Navy allegedly established equal footing there); *compare* No. 22-10534, Dkt. #161 (oral argument held Feb. 6, 2023) *with* Dkt. #163 (Supplemental Letter from Navy on Feb. 17, 2023, stating new guidance "explicitly provides that '[u]nder no circumstances shall a Commander mandate that any Navy service member receive the COVID-19 vaccination'; 'COVID-19 vaccination shall not be a consideration in assessing individual service member suitability for deployment or other operational missions.'").

To be sure, the Coast Guard insists that its post-mandate policies have "prohibited new adverse actions." (Resp.Br. at 4 (emphasis added).) But the Coast Guard merely cites to seven post-mandate policies, none of which *prohibits ad hoc discrimination* with respect to assignments

(including deployment) like the Navy's policies. (*Id.*) The Coast Guard does not point to any specific language showing otherwise, even though the party asserting mootness "bears the burden" of proving it. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993).[3] Instead, it highlights some provisions that remove relevant administrative marks, "upgrade" conduct marks to "satisfactory" for *enlistees* (*see* ROA.1905), "cancel" mandatory discrimination, and assert a "focus on retaining unvaccinated members" who are *enlistees* (*see* ROA.1896). (Resp.Br. at 14.)  But none of this is equivalent to the Navy's language "explicitly provid[ing]" that "[u]nder *no circumstances* shall *a Commander* mandate that *any* Navy service member receive the COVID-19 vaccine," including in assessing suitability for deployment. *See supra*.

Indeed, the Coast Guard never claims it has "*ruled out* using vaccination status to deny deployment eligibility, training opportunities, and assignments," or "*forbid[den]* consideration of vaccination status for

---

[3] This is the same Coast Guard that ostensibly lied to a separate tribunal that it had "approved" 12 religious accommodation requests without acknowledging those 12 individuals were already slated for separation and thus qualified for a separate "administrative" exemption (Op. Br. at 54-55 and n.16)—which the Coast Guard's Response does not deny.

such decisions." *Navy SEALs II*, 72 F.4th at 673. In other words, it does not even assert that Plaintiffs are definitively safe from *ad hoc* harms based on their COVID-19 vaccination status. This alone prevents mootness. *See Navy SEALs II*, 72 F.4th at 673; *see also Tucker v. Gaddis*, 40 F.4th 289, 292-93 (5th Cir. 2022) (no mootness where prison change-in-policy merely allowed plaintiff to apply for religious services without ensuring he could fairly obtain such services).

### 2.    Individual ongoing consequences.

The Coast Guard also wrongly argues there are no ongoing individual collateral consequences that this Court can remedy.

As noted (Op.Br. at 16), Plaintiffs' records now contain a scarlet-letter "Navarro memo" replacing their negative CG-3307s. These letters continually document their purported violation of the COVID-19 vaccination mandate. (*See* ROA.1452.) The Coast Guard says the memos simply "document the authority for *changing a federal record*," (Resp.Br. at 15.), but it cites no legal authority requiring such documentation, nor explains why the Navy has authority to fully expunge similar records without leaving documentation. (Op.Br. at 36.) Moreover, now that Plaintiff Marcenelle has received his requested promotion, the Coast

Guard has informed him that his Officer Evaluation Report documenting his prior missed promotion has been "*removed from [his] . . . Record*"— confirming that the Coast Guard *can* expunge an invalid record without a substitute scarlet-letter memo. *See* Plaintiffs' Unopposed Motion to Supplement the Record on Appeal and Exhibits A and B attached thereto, filed with this Reply Brief. (Plaintiffs respectfully request that this Court consider this new evidence given the Coast Guard's own reliance on Marcenelle's recent promotion on December 19, 2023.)

The Coast Guard further argues that no decision-making authority can view the Navarro memos. (Resp.Br. at 15-16.) However, the Coast Guard points to no record evidence in support, while the record *does* include ALCGOFF 042/23, ignored by the Coast Guard, which states that "Selection Boards [ ] will view the officer's *complete record*" in considering requests for promotion to Lieutenant Junior Grade and Lieutenant. (ROA.1910 at No. 13.) The same policy warns that "any member with a matter of record" even "*associated with* the COVID-19 mandate should" contact personnel staff "*immediately*" to ensure its removal. (ROA.1911 at No. 16.) Thus, both Stone and Marcenelle have attested to their reasonable concerns that commanders will be able to view these records

in the future (ROA.1500, 1528, 1536-37), and the Coast Guard has not established otherwise.

The Coast Guard downplays Plaintiff Stone's injury from a downgraded evaluation—going from "one of few distinguished officers" to "center of mass" under the COVID-19 vaccine mandate (ROA.1527-28, 1531). It states that the evaluation "was overall quite positive" because it "recommend[s] [him] for promotion w/ best of peers." (Resp.Br. at 15.) However, Stone's prior evaluation had stated he was a *Must-select*" for promotion. (ROA.153, 175.) And a mere "recommendation" is an internal, Coast Guard-specific term for a relatively lukewarm position on a service member's future promotion prospects (and is the minimum included on nearly every Junior Officer evaluation). (ROA.1931.) The Coast Guard also speculates that his downgrade will not be harmful to his career moving forward, in the face of directly contrary testimony from Stone himself (ROA.1528), as well as that of Vice Admiral Lee (Op.Br. at 8-9; *see infra*). Stone thus seeks an injunction ensuring that his vaccination status cannot be used against him *again* on an *ad hoc basis*, including by reliance on this vaccine-tainted evaluation.

As to the fact Marcenelle has finally received his otherwise-nearly-automatic promotion, the Coast Guard still fails to ensure that his vaccination status cannot again be used against him by future promotion boards—especially when, for example, it is no longer desperately attempting to remedy a historically bad recruiting crisis exacerbated by its own vaccine mandate. (ROA.163-164.) *Cf. U.S. Navy SEALs 1-26 v. Biden*, 4:21-cv-01236 (N.D. Tex.) ECF 230-2 at 2-3 (Navy policy that "future selection board[s]" must "ensur[e] [they] do not consider any adverse information solely related to COVID-19 vaccine refusal in cases in which an accommodation was requested").

Further, Marcenelle's promotion after more than 10 months of exhaustive efforts (ROA.1913) only confirms the Coast Guard's litigation posturing here, especially when compared to its simultaneous promises to restore separated-but-returning members' promotions within just 30 days (ROA.1966). *See infra.*

As to ongoing quarantine requirements and vaccination checks, the Coast Guard simply says these restrictions were not part of its COVID-19 vaccine mandate. (Resp.Br. at 14.) But the Coast Guard overlooks that these requirements essentially "out" Plaintiffs as putative (alleged)

10

lawbreakers for being "unvaccinated" while in the Coast Guard during the mandate. In other words, the *operation* of these policies gives rise to a secondary harmful *effect of the mandate*, which prevents mootness here. Applied to Plaintiffs and the putative class, these policies conflict with the Coast Guard's obligation to restore them to "equal footing with their vaccinated counterparts." *Navy SEALs II*, 72 F.4th at 673.

Accordingly, because the Coast Guard has failed to eradicate these extant collateral consequences, this case is not moot. Moreover, all these concerns remain justiciable despite the Coast Guard's arguments to the contrary. *See infra.*

## B.  Plaintiffs remain entitled to declaratory judgment.

The Coast Guard also wrongly denies that Plaintiffs are at least entitled to declaratory relief given the ongoing harm to their service reputations and the concrete consequences of that harm.

The Coast Guard notably does not deny that service reputation is uniquely important in the Coast Guard given its substantially smaller membership compared to the other branches. (Op.Br. at 8.) The Coast Guard questions whether reputational injuries can prevent mootness, but it never acknowledges this Court's decision in *Connell v. Shoemaker*,

555 F.2d 483 (5th Cir. Cir. 1977), which held that reputational harm inflicted by a since-rescinded Army order justified a declaratory judgment. The Coast Guard does not dispute that *Connell* remains good law and applies here, as explained in Plaintiffs' Opening Brief (at 40-47).

The Coast Guard also does not dispute that its rescission, unlike the DoD's, uniquely labels Plaintiffs and the putative class as "violat[ors] of the lawful general orders" who are now merely protected from resulting consequences (allegedly). (Resp.Br. at 17.) The Coast Guard defends this denigration by claiming that any reputational impacts are "pure speculation" given Stone's recommendation for, and Marcenelle's received, promotion. (*Id.*) As noted, however, Stone's evaluation was a *downgrade* both explicitly and in the Coast Guard's specialized terminology; he has already been denied requisite training on an individual basis; and both he and Marcenelle remain unprotected from commander-level discrimination in promotion going forward. Indeed, the Coast Guard's recent warning that members needed to "immediately" contact personnel officials to ensure their records do not contain any negative materials "associated with the COVID-19 mandate" (ROA.1911) viewable by Selection Board officials confirms the concrete danger of

having a known service reputation as a "violat[or] of the lawful general orders".

The Coast Guard's dismissal of Vice Admiral Lee's declaration confirming these ongoing reputational harms is weak and unpersuasive. The Coast Guard simply alleges that Admiral Lee, who served in the Coast Guard for nearly 36 years, "has no direct experience" with its vaccine mandate or rescission. (Resp.Br. at 18.) But it does not (and cannot) dispute that Admiral Lee has direct knowledge of how "service reputation" operates in the Coast Guard; that he has remained in contact with active duty officers; and that he has an experience-based understanding that COVID-19 vaccination stigma is likely to result in "concrete, predictable harm to [Plaintiffs'] careers," especially given his direct knowledge that "Coast Guard leadership *still* considers these service members to have disobeyed a lawful order." (ROA.1773, 1774 (emphasis in original).)

That is exactly the kind of reputational harm this Court deemed sufficient in *Connell* to justify declaratory relief. *See* 555 F.2d at 485; *accord F.C.C. v. Fox Television Stations Inc.*, 567 U.S. 239, 255-56 (2012). Plaintiffs are similarly entitled to a declaratory judgment here—

13

especially given that, among all the branches of the Armed Forces, only the Coast Guard's "shocking" denial of all religious accommodations has *not* been judicially deemed a violation of RFRA (though it blatantly was). (*See* Op.Br. at 42.)

## C.    The Coast Guard's actions are not insulated from judicial review.

The Coast Guard asserts Plaintiffs' claims are non-justiciable even if legitimate on the merits. In other words, the Coast Guard insists that it be entrusted to identify and correct its own violations of RFRA. The Court should reject, as it has before, this misplaced arrogation of constitutional authority.

As pointed out in Plaintiffs' Opening Brief (and ignored by both the District Court and the Coast Guard's response), Article I, Section 8 of the United States Constitution explicitly provides Congress authority to regulate the military branches (Op.Br. at 48), and this Court is among those that have recognized that Congress exercised precisely this power, entrusting service members' religious liberty to the courts, by enacting RFRA, *see, e.g., Navy SEALs 1-26 v. Biden*, 27 F.4th 336, 345-46 (5th Cir. 2022) ("*Navy SEALs I*") ("Congress rendered justiciable Plaintiffs' claims under RFRA.").

Moreover, the Supreme Court has long recognized that the Constitution does not entrust citizens' highest rights, those guaranteed by the First Amendment, to the "keeping of the military." *Parisi v. Davidson*, 405 U.S. 34, 54-55 (1972) (Douglas, J., concurring). The rights protected by RFRA and the First Amendment are not within the military's "expertise" or "domain." *Id*. Therefore, this Court is well within its competence to identify and remedy injuries relating to Coast Guard's RFRA violations.

This is no less true of Plaintiffs' claims related to promotions (including the Coast Guard's ongoing refusal to prohibit Selection Boards from engaging in *ad hoc* discrimination). The Coast Guard's Response posits an absolute reservation of all promotion-related decisions by relying on two cases that predate the enactment of RFRA in 1993 (Resp.Br. at 16) (citing *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) and *Orloff v. Willoughby*, 345 U.S. 83, 92 (1953)), the general principle of which was recently repeated in Justice Kavanaugh's solo concurrence in *Austin v. U.S. Navy SEALs 1-26*, 132 S.Ct. 1301 (2022).

While these opinions indeed favor deference to military judgment in personnel-related matters, that deference ends where a service

member has been denied a "clear legal entitlement," *Guy v. United States*, 608 F.2d 867, 874 (Ct. Cl. 1979), and especially where he has suffered that injury in violation of his constitutional rights, *see, e.g., Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987). Both are true of the Coast Guard's discrimination based on a service member's religious exercise.

The Coast Guard's refusal to delete the scarlet-letter Navarro memo is also eminently justiciable. The Coast Guard does not even attempt to explain how this apparently discretionary act is in any way a "complex, subtle, [or] professional decision" requiring "military judgment"—indeed, the decision to retain this record was not even made by a military member. (ROA.1809) (declaration of Mr. Michael Lemorie, stating "I am a *civilian employee*" (emphasis added) before explaining his decision to enter the Navarro memorandum into Jackson's records).

And even if this decision were at all complex, it is well established that expungement of records is a judicially available remedy for statutory and constitutional violations. *See, e.g., Abdelfattah v. U.S. Dept. of Homeland Sec.*, 787 F.3d 524 (D.C. Cir. 2015) (a case remained "a live controversy" where plaintiff requested DHS expunge records the

16

retention of which would "lead to future deprivation of [plaintiff's] rights."); *Chastain v. Kelley*, 510 F.2d 1232, 1235-1236 (D.C. Cir. 1975) ("[F]ederal courts are empowered to order the expungement of Government records where necessary to vindicate rights secured by the Constitution or statute . . . Such a right may exist if the information . . . was acquired by fatally flawed procedures, or . . . is prejudicial without serving any proper purpose…").

The same rules apply to the military. *See Doe v. U.S. Air Force*, 812 F.2d 738 (D.C. Cir. 1987) (Air Force's failure to expunge documents obtained in violation of Airman's constitutional rights prevented necessary "eradication" to establish mootness).

In short, Plaintiffs' claims are justiciable.

## II.  Mootness exceptions also apply.

### A. Voluntary Cessation.

Even if the Coast Guard successfully eradicated the mandate's collateral consequences, the voluntary cessation exception to mootness would readily apply, contrary to the Coast Guard's arguments.

## 1. The Coast Guard voluntarily rescinded the mandate and its enforcement policies.

The Coast Guard persists in claiming that that the 2023 National Defense Authorization Act ("NDAA") forced it to rescind the primary mandate. Not so. As noted in Plaintiffs' Opening Brief, Section 525 of the 2023 NDAA rescinded only the *DoD* vaccine mandate: "Not later than 30 days after the date of the enactment of this Act, the *Secretary of Defense* shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 . . . ." 2023 NDAA, PL 117-263, Dec. 23, 2022, 136 Stat 2395, Sec. 525. Section 525 does not oblige the Department of Homeland Security, including the Coast Guard, to do anything, unlike other sections of the same NDAA. *See*, *e.g.*, Sec. 598 ("the Secretary of Defense, in coordination with the Secretary of Homeland Security with regards to the Coast Guard, shall conduct a review"); *see also* Sec. 612; Sec. 616; Sec. 1045. The Coast Guard also has no response to Plaintiffs' point that the 2024 NDAA's vaccine relief specifically applies to the Coast Guard, unlike the 2023 version. (Op.Br. at 12-13.)

Further, the Coast Guard has consistently asserted that its mandate merely "align[ed]" and was "consistent with," but not required by, the DoD mandate (*see* Resp.Br. at 21, ROA.275, 1776, 1780, 1444,

18

1453, 1465, 1473), as it explicitly argued before the District Court (*see* ROA.1303). The Coast Guard's rescission of its mandate was plainly voluntary.

The Coast Guard observes that Plaintiffs named the Secretary of Defense as a defendant. (Resp.Br. at 18.) Indeed, that's because Congress or the President can direct the Coast Guard *to operate as a service in the Navy (and thus under the DoD) upon a declaration of war.* 14 U.S.C. § 103(b). Plaintiffs' requested relief would be toothless in that circumstance were the Secretary of Defense not a defendant.

Regardless, the Coast Guard does not contest that its rescission of several of the mandate's enforcement mechanisms was voluntary. (Op.Br. at 51-52.) Thus, the voluntary cessation doctrine indisputably applies here.

### 2. The Coast Guard confirms it is not entitled to a presumption of good faith.

The Coast Guard demands that this Court follow the District Court's lead and presume it has operated in good faith—a presumption the Supreme Court has never recognized in voluntary cessation cases. This is a bold move by a component of this Department of Homeland Security—a repeat perpetrator of legal gamesmanship. *See Missouri v.*

*Biden*, 83 F.4th 350, 393 (5th Cir. 2023) ("The district court was right to be skeptical of the officials' [including Defendant Mayorkas's] claims that they had stopped all challenged conduct"; citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 327-29 (5th Cir. 2020)), cert. granted *sub nom. Murthy v. Missouri*, 144 S. Ct. 7 (2023); *see also Texas v. Biden*, 20 F.4th 928, 964 (5th Cir. 2021) (discussed *infra*), *rev'd on other grounds*, 142 S. Ct. 2528 (2022).

As the Coast Guard itself admits, "evidence to the contrary" will negate any presumption of good faith. (Resp.Br. at 19.) Plaintiffs have presented a host of examples of Coast Guard actions that were manifestly indefensible and showed bad faith. These included its sham process resulting in zero genuine religious exemptions from 1,200 applicants (Op.Br. at 54); its disingenuous statements to disguise this number (*id.* at 54-55); and its prompt restoration of promotions for ex-service members but procrastination for Plaintiffs (*id.* at 56). The Coast Guard does not dispute any of these facts.

Moreover, the Coast Guard conveniently ignores the three factors this Court recognizes overcome the presumption of good faith and prevent mootness, as recently outlined in *Texas v. Biden,* a case involving

similar gamesmanship from DHS. (*See* Op.Br. at 53.) The Coast Guard effectively concedes that all three factors apply here:

First, the Coast Guard does not dispute that there is a complete "absence of a controlling statement of future intention not to repeat the challenged policy" here. *Texas*, 20 F.4th at 962. Instead, it openly insists "defendants are not required to promise they will never again impose any vaccination requirement" (Resp.Br. at 21), while providing no assurances for Plaintiffs' religious rights. *Cf. Texas*, 20 F.4th at 963-64 ("The Government's suggestion of Mootness doesn't even *claim* that DHS has forsworn further [similar action] on this topic." (Emphasis in original)). Nor does it dispute that the Biden Administration's objection to the 2024 NDAA *admits* an intent to reimplement the mandate (Op.Br. at 58), or that the Coast Guard has given no indication it will remedy its blatant RFRA *procedural* violations of categorically denying religious accommodation requests based on generalized interests, rather than conducting RFRA-compliant individualized review. *Id.* Further, by refusing to restrain commander and board discrimination against unvaccinated members (like the Navy has), the Coast Guard has intentionally preserved its liberty to continue harming Plaintiffs.

Second, the Coast Guard does not dispute "the suspicious timing" of its policy changes. *Texas*, 20 F.4th at 962. It is no defense to baldly assert that there were no signs of "gamesmanship or litigation posturing." (Resp.Br. at 20.) Instead of explaining its own actions, the Coast Guard confusingly claims that because the *Navy* did not use gamesmanship, neither did the *Coast Guard*. (*Id.*) Directing attention to the wholly superior actions of the Navy, however, only highlights the Coast Guard's gamesmanship and posturing.

Specifically, the Coast Guard offers no benign explanation for its repeated goalpost-shifting rescission efforts that loosely tracked, but did not fully satisfy, Plaintiffs' demands in the District Court. (ROA.1514.) (Opening Br. at 15-16.) For example:

- In January 2023, Plaintiffs informed the Court they still required relief from the Coast Guard's failure to expunge adverse records. (ROA.1365, 1368.) The Coast Guard ordered *eventual* removal of CG-3307s just days later. (ROA.1452.)

- On March 31, Plaintiffs informed the Court they still required relief from the Coast Guard's refusal to consider Marcenelle's Special Selection Board (SSB) request. (ROA.1508.) In April—

just two days before filing its reply in support of its motion to dismiss—the Coast Guard issued ALGPSC 058/23 telling officers they could request an SSB. (ROA.1844.)

- Later in April, Plaintiffs requested urgent relief for Marcenelle before the imminent closure of the then-current promotion year. (ROA.1819.) In May, the Coast Guard finally granted his SSB request while still forcing him into the next promotion year without any assurances he would be promoted. (ROA.1831.)

The District Court cited several of these actions as evidence of mootness (*see* ROA.1952), but their timing cuts the other way: "DHS's pattern of belated shifts and its eleventh-hour mooting of [Plaintiffs' disputes] is more than a little 'suspicious.'" *Texas*, 20 F.4th at 964.[4]

The Coast Guard equally does not deny the suspicious timing of multiple discharge deferrals, each in response to Plaintiffs' demands, and

---

[4] Further, the Coast Guard issued this *incomplete* seriatim rescission guidance knowing that every other military service had already lost defending their own RFRA violations. (Op.Br. at 42.) By the time the Coast Guard started this process in January 2023, it was apparent that the Coast Guard was likely to lose this litigation unless it could prevent the District Court from ever reaching the merits.

all at the eleventh hour of service members' discharge deadlines. (ROA.794, 1135, 1144, 1230.) Critically, the deferrals were never lengthy enough to provide meaningful relief for members about to lose their livelihoods, and yet were the minimum necessary to escape from a renewed motion for TRO (which was originally denied "without prejudice"). (*See* ROA.1136, 1145, 1231.) (Op.Br. at 55.)

Third, the Coast Guard effectively concedes its "continued defense of the challenged policy." *Texas,* 20 F.4th at 962. It openly alleges that it is not "required to disavow the legality of the now-defunct requirement challenged here or the religious exemption process more generally." (Resp.Br. at 21.) Indeed, the Coast Guard's original rescission order remains in place and continues to label Plaintiffs as "violat[ors] of the [allegedly] *lawful* general orders"—a characterization the Coast Guard's Response does not dispute.

These "facts easily satisfy all three [*Texas*] factors," and "DHS has therefore not borne its formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Texas*, 20 F.4th at 963, 964 (internal quotes omitted).

Even assuming the Coast Guard "bear[s] a lighter burden," *Navy SEALs II*, 72 F.4th at 673 (cleaned up), it still fails to make "absolutely clear," as it must, that its challenged actions are not reasonably likely to recur. *Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). In fact, it signals that the challenged conduct *will* recur*,* especially given its refusal to eradicate the ongoing collateral consequences of the mandate and the Biden Administration's comments to the 2024 NDAA. *See supra*. More than showing just a mere "ability to reimplement" its policies, *Navy SEALs II*, 72 F.4th at 674, these facts show a high likelihood—indeed, intent—to reimplement.

This is all the more true of the Coast Guard's blatant RFRA *procedural* violations—the "gravamen" of Plaintiffs' *class-action* claims (Op.Br. at 58)—about which the Coast Guard's Response says absolutely nothing. Indeed, there are no new policies, guidance, training, instructions, or even a bare admission of past error in issuing mass denials of the putative class members' requests for religious accommodation without "to the person" analyses, *see Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006), based on invalid "broadly formulated interests," *see Fulton v. City of*

*Philadelphia*, 141 S. Ct. 1868, 1881 (2001); *accord Navy SEALs I*, 27 F.4th at 351. The Coast Guard does not dispute that it has given "zero assurances that it will begin assessing accommodation requests" in compliance with RFRA. (Op.Br. at 54.)

Accordingly, the voluntary cessation exception applies here and prevents mootness.

## B.    Capable of Repetition but Evading Review.

The Coast Guard argues that its RFRA violations and related harms are not capable of repetition while evading review. The Coast Guard is wrong.

### 1.    The dispute was too short to be fully litigated.

The Coast Guard argues that vaccine mandates, in general, are not "necessarily too short in duration to be fully litigated." (Resp.Br. at 22.) But the question is whether the "*challenged action*" is "in *its* duration too short to be fully litigated prior to its cessation." *Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2022). While vaccine mandates for traditional, well-tested, and proven vaccines may be of enduring character, the fact that the Coast Guard's COVID vaccine mandate survived only from September 7, 2021 (ROA.22) to January 11,

2023 (ROA.1364) shows that a mandate for an experimental vaccine with high rates of failure and severe medical complications is not. (ROA.1515.) In short, a *COVID-19-related* vaccine mandate is exactly the sort of "exceptional situation[]" contemplated by the rule. *See Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir. 2020) (assuming that COVID-related "stay-at-home orders" were too short in duration to be fully litigated).

Further, this Court has explained that an exceptional situation exists when a party "show[s] its claims have evaded the review . . . for reasons beyond its control"; that it "diligently . . . t[ook] advantage of the legal avenues that would allow for litigation within the necessary time constraints"; and that it "ma[de] a full attempt to prevent the case from becoming moot." *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 371 (5th Cir. 2020) (cleaned up, internal citations omitted).

Plaintiffs here exhausted every tool available to them in the District Court to prevent this case from becoming allegedly moot. They filed this complex class action lawsuit as soon as feasible after the Coast Guard's long-delayed final denials of their religious accommodation requests. And, after the District Court's denial of their TRO motion "without prejudice," they consistently updated the Court (and engaged in two

mediations) about the Coast's Guard's continued dilatory actions and Plaintiffs' ongoing need for preliminary injunctive relief (including filing an emergency motion for an expedited ruling given the imminent closure of Marcenelle's promotion-year window). (*See, e.g.*, ROA.1760, 1087, 1356, 1336, 1375, 1503, 1819, 1829, 1824, 1957.) In other words, any alleged mootness here was *despite*, not *because of*, Plaintiffs' diligent litigation efforts.

As to the Coast Guard's temporary stay of Plaintiffs' discharge dates and its miserly extensions for class members with imminent discharges (Op.Br. at 63), the Coast Guard casts its evasions as "reasonable attempts to accommodate plaintiffs during the pendency of this litigation." (Resp.Br. at 22.) But if that were so, the accommodations would have endured during the pendency of this litigation.[5] Instead, the expressly temporary extensions prevented Plaintiffs from renewing their request for a TRO, including on behalf of their suffering putative class members, after their original motion was denied "without prejudice"

---

[5] These accommodations were provided to putative class members. The Coast Guard still granted the deferrals at Plaintiffs' request while an undecided motion for class certification loomed.

(ostensibly because they did not yet have definite discharge dates).[6] Thus, the Coast Guard's gamesmanship helped ensure Plaintiffs' challenge was too short to be fully litigated.

As this Court observed in a case the Coast Guard itself cites, "[w]e would be most reluctant to permit a federal agency to so arrange its timetables that the scope of its authority would continue to elude judicial scrutiny." *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 346 (5th Cir. Unit B July 1981). This principle "could also apply to purposeful efforts to delay judicial review." *Empower Texans,* 977 F.3d at 372 (citing *ITT Rayonier*); *cf. In re City of Detroit, Mich.*, 841 F.3d 684, 692 (6th Cir. 2016) (finding that Detroit's history of quitting and resuming challenged actions in response to litigation events "is the type of conduct the capable-of-repetition exception is intended to preserve for review"). That is this case.

---

[6] For example, the Coast Guard did not actually enforce Jackson's denial against him until June 30, and did not issue discharge actions against him until August; yet he *still* wasn't given a definite discharge date. (ROA.302-03.) Marcenelle had a similar timeline. (*See* ROA.371-72, 953, 1121.)

### 2. The Coast Guard is likely to repeat Plaintiffs' harms.

The Coast Guard argues that there is no indication it will resume its COVID vaccine mandate in the future. (Resp.Br. at 21-22.) But there is every indication that it will continue denying Plaintiffs a religious accommodation *process* that complies with RFRA (the gravamen of Plaintiffs' class-wide claims). Indeed, it has halted consideration of COVID vaccine exemption requests altogether, despite an ongoing lack of protection against commander-level discrimination. As Judge Duncan observed regarding the Navy's halted exemption process, the decision to stop processing exemptions has turned "a 50-step process to a zero-step process." (ROA.1377.)[7]

Further, a party asserting this exception need only show "either a demonstrated probability or reasonable expectation that they will be subject to the same unlawful governmental action again." *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010) (cleaned up, internal citations omitted). This standard "is not mathematically precise and requires only a reasonable likelihood of repetition." *Oliver v. Scott*, 276

---

[7] *See Navy SEALs II* (oral argument, Feb. 6, 2023). (ROA.1377.)

F.3d 736, 741 (5th Cir. 2002) (cleaned up, internal citations omitted). Plaintiffs easily satisfy this standard here.

The repeating harms detailed throughout this Reply and Plaintiffs' Opening Brief are not speculative, as Admiral Lee's declaration confirms, and given that Plaintiffs must meet mandatory promotion boards as their careers progress. A promotion board will consider Marcenelle and Stone for promotion to Lieutenant Commander after they have served as a Lieutenant for three years (ROA.1656), and failure to promote may ultimately result in discharge. (ROA.1376.)

Thus, Plaintiffs have gone beyond showing mere "opportunity to act in the same allegedly unlawful manner in the future." *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010); *see also Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 577 (D.C. Cir. 2010) (finding that a denial of a regulatory exemption had a reasonable chance of recurring where the agency had not "adequately explain[ed] the reasons" for its denial, even though a future exemption would "turn on specific facts . . . at the relevant time"). The Coast Guard's unexplained and unreasonable refusal to issue an order similar to the Navy's makes the recurrence all the more likely.

Accordingly, even if this case were moot, the exception to mootness for injuries capable of repetition but evading review applies.

## III. The Coast Guard did not establish that the District Court properly reviewed Plaintiffs' Rule 60(b) motion.

The Coast Guard cannot defend the District Court's reasons for denying Plaintiffs' Rule 60(b) motion, because the District Court provided nothing for it to defend.

The Coast Guard does not dispute that a District Court abuses its discretion in denying a Rule 60(b) motion when it acts "in an unreasonable or arbitrary manner without reference to any guiding rules and principles." *United States v. M/Y Galactica Star*, 13 F.4th 448, 453 (5th Cir. 2021) (cleaned up). But even the Coast Guard cannot identify any "guiding rules and principles" for adjudicating a Rule 60(b) motion concealed in the District Court's two-sentence denial or incorporated by that denial's vague reference to "reasons set forth in the Court's . . . Order dismissing this case." (ROA.1971.)

Notably, the District Court did not hold that *all* of Plaintiffs' claims were inherently non-justiciable, but only Stone's claims related to his missed training and Marcenelle's claims related to his missed promotion. (ROA.1950-51.) It expressly recognized that Plaintiffs had justiciable

32

claims to ensure they are not subject to "any new adverse administrative actions [as] unvaccinated service members" under RFRA (but it wrongly held that such protections are now in place). (ROA.1449-50.)

Thus, the "reasons" provided in the District Court's mootness Order did not directly apply to Plaintiffs' argument based on ALCOAST 291/23. Again, that policy was not before the District Court until *after* final judgment. (Opening Br. at 63-64.) The Court thus did not consider ALCOAST 291/23 in concluding that the Coast Guard's actions mooted this case in compliance with *Navy SEALs II* (ROA.1949), which, as noted, found mootness only where the Navy "definitely restored Plaintiffs to *equal footing*" with their compatriots. 72 F4th at 673.

Without disputing the "guiding rules and principles" necessary to resolve a Rule 60(b) motion recited in Plaintiffs' brief, the Coast Guard instead asserts that the motion presents an "insubstantial[] . . . challenge to the judgment." Resp.Br. at 25. The Coast Guard is wrong.

ALCOAST 291/23 uniquely shows that at the same time the Coast Guard was mopping up the mess its RFRA and First Amendment violations caused for *ex*-service members, its arguments that nothing further could be done for *current* service members were disingenuous, at

best. The duplicity revealed by ALCOAST 291/23 presents an extraordinary circumstance illustrating anew that "the initial judgment [was] manifestly unjust." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).

The issuance of ALCOAST 291/23 thus also undermines the presumption of good faith the District Court afforded to the Coast Guard. (ROA.1953.) The District Court neglected to cross check that presumption against the new evidence that the Coast Guard had begun giving special career relief to nearly any victim of its RFRA and First Amendment violations *except for* Plaintiffs and putative class members.

Because the District Court did not find that all of Plaintiffs' claims against the military were nonjusticiable, its mootness Order did not directly apply to ALCOAST 291/23. Failing to analyze Plaintiffs' Rule 60(b) motion based on that policy was thus an abuse of the District Court's discretion, and the Coast Guard points to no authorities stating otherwise. Moreover, ALCOAST 291/23 presents an exceptional circumstance of government duplicity that shows the judgment's manifest injustice and undermines any presumption of good faith in the Coast Guard's actions.

## CONCLUSION

Plaintiffs' case is not moot. This Court should REVERSE.


Dated: February 7, 2024

Respectfully submitted,

/s/ Michael G. McHale

Stephen Crampton
THOMAS MORE SOCIETY
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael G. McHale
THOMAS MORE SOCIETY
10506 Burt Circle, Ste. 110
Omaha, NE 68114
(402)501-8586
mmchale@thomasmoresociety.org

Nathan Loyd
THOMAS MORE SOCIETY
5101 Old Highway 5, Box 442
Lebanon, GA 30146
(559)744-3664
nloyd@thomasmoresociety.org

Adam S. Hochschild
Hochschild Law Firm, LLC
THOMAS MORE SOCIETY
PO Box 401
Plainfield, VT 05667

(314)503-0326
adam@hochschildlaw.com

*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF SERVICE**

I certify that on February 7, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. Service will be accomplished by the CM/ECF system and by email to counsel for Defendants-Appellees.


/s/  Michael G. McHale
*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 6,447 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

/s/ Michael G. McHale
*Counsel for Plaintiffs-Appellants*
